[Crim. No. 1450. Second Appellate District, Division Two.—April 22, 1927.]

## THE PEOPLE, Respondent, v. JAMES JENSEN, Appellant.

[1] CRIMINAL LAW — PLEADING — AMENDMENTS—DISCRETION—SECTION 1008, PENAL CODE. — Section 1008 of the Penal Code allows amendment of an information in the discretion of the trial court at any time after a defendant's plea, where it can be done without prejudice to the substantial rights of the defendant, provided there is neither a change in the offense charged nor a charge of any offense not shown by the evidence taken at the preliminary examination.

[2] ID.—ASSAULT WITH INTENT TO COMMIT RAPE—NAME OF PROSECUTRIX — AMENDMENT OF INFORMATION — ABSENCE OF PREJUDICE.— In a prosecution for an assault with intent to commit rape upon a child of six years, the action of the trial court, after the

1. See 14 Cal. Jur. 91.
2. See 14 Cal. Jur. 93.

prosecution had presented its case to the jury, in permitting an amendment of the information so as to give the correct name of the prosecutrix, was not prejudicial to the rights of defendant, where he was in no way taken by surprise, nor did he request any continuance because of the correction of the clerical error, and he had heard the testimony of the prosecutrix and her grandmother, who were the only witnesses for the prosecution, and there is no pretense that he was not aware from the very beginning of the identity of the individual in question, however named in the information.

[3] ID. — INTENT — INFERENCES — EVIDENCE.—In such prosecution, intent on the part of the defendant must necessarily be determined largely by reasonable inferences from the facts placed before the jury; and the inference drawn by the jury that there was an assault by defendant with intent to commit rape was amply justified.

[4] ID. — JOINT OPERATION OF ACT AND INTENT—INTENT DETERMINED BY CIRCUMSTANCES — ISTRUCTIONS.—A sentence in an instruction dealing with the question of intent, that there must exist a union or joint operation of act and intent, was correct, as was also a succeeding sentence declaring that intent must be judged by the circumstances connected with the offense.

[5] ID. — UNLAWFUL ACT — INTENT — PRESUMPTIONS — INSTRUCTIONS. In such prosecution, that part of an instruction dealing with the question of intent, that 'An unlawful act is presumed to have been done with an unlawful intent. A person is presumed to intend the ordinary consequences of his voluntary act," contains presumptions formulated in subdivisions 2 and 3 of section 1963 of the Code of Civil Procedure, and, in view of the instructions as a whole, cannot be held so prejudicial as to require a reversal.

[6] ID. — COMMISSION OF VOLUNTARY ACT — INSTRUCTION.—In such prosecution, a sentence in an instruction dealing with the question of intent, that "a person must be presumed, and is presumed, to do that which he voluntarily and wilfully does in fact do," hardly does more than give expression to a truism—a man does what he does—and could have occasioned no prejudice.

[7] ID.—SPECIFIC INTENT—CONSEQUENCES OF ACTS—PRESUMPTIONS—INSTRUCTIONS—ABSENCE OF PREJUDICE.—In such prosecution, the defendant was not harmed by that portion of an instruction to the effect that a person must be presumed to intend all the natural, probable, and usual consequences of his own acts.

[8] ID.—INTENT—EVIDENCE—INFERENCES.—In such prosecution, it is not necessary for the evidence to show that the accused intended

4.   See 7 Cal. Jur. 850; 8 Cal. Jur. 328.
5.   See 8 Cal. Jur. 25, 340.
8.   See 22 Cal. Jur. 369; 22 R. C. L. 1232.

to gratify lust at all events; the intent is to be gathered from the outward acts of the defendant and the accompanying circumstances, and from those acts and circumstances the jury are to draw rational conclusions as human beings.

[9] ID. — EVIDENCE. — In such prosecution, evidence of the fact of an assault on the prosecutrix is found in her testimony that the defendant caused her to lie down and disarranged her clothing for carnal purposes; and the physical contact which followed, together with the condition of the child which the grandmother subsequently observed, are indications of intended sexual connection.

[10] ID. — CREDIBILITY OF WITNESSES — USE OF PRONOUNS—INSTRUCTIONS.—In such prosecution, a miscarriage of justice did not result from the form of an instruction dealing with the province of the jury in determining the credibility of the witnesses, merely because the trial court in the earlier part of the instruction used the masculine pronoun instead of pronouns alternatively masculine and feminine, and in the latter portion of the instruction used both forms of pronouns.

[11] ID. — TESTIMONY OF PROSECUTRIX — INSTRUCTIONS—ABSENCE OF PREJUDICE.—In such prosecution, that part of an instruction that "You are instructed that while it is the law that testimony of the prosecutrix should be carefully scanned, still this does not mean that such evidence is never sufficient to convict. If you believe the prosecutrix it is your duty to render a verdict accordingly," did not result in a miscarriage of justice, where in the same instruction the jury was told that "It is sufficient, if you believe from her evidence and all other testimony and circumstances in proof of the case, beyond a reasonable doubt, that the crime charged has been committed," and the case made against defendant was strong and clear and the instructions as a whole were fair.

---

(1) 31 C. J., p. 827, n. 98.   (2) 31 C. J., p. 831, n. 76.   (3) 33 Cyc., p. 1495, n. 79.   (4) 16 C. J., p. 985, n. 45; 33 Cyc., p. 1507, n. 35.   (5) 17 C. J., p. 339, n. 64.   (6) 17 C. J., p. 339, n. 64.   (7) 16 C. J., p. 1050, n. 84.   (8) 33 Cyc., p. 1494, n. 76.   (10) 17 C. J., p. 341, n. 84.   (11) 16 C. J., p. 1053, n. 93.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. Charles L. Allison, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

11.  See 8 Cal. Jur. 601; 22 Cal. Jur. 408.

Fred Duffy for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and James S. Howie for Respondent.

JOHNSON, J., *pro tem.*—This is an appeal by defendant from an order denying his motion for a new trial and from a judgment of conviction for an assault with intent to commit rape upon the prosecutrix, Bettie Horton, a child of six years.

As originally drawn, the information through clerical error gave the name of the prosecutrix as Bettie Norton, instead of Bettie Horton. When the prosecution rested, the defendant, before proceeding with his defense, moved the court for a direction to the jury to find the defendant not guilty upon the ground, among others, that the information charged an assault upon Bettie Norton while the proof related to Bettie Horton. The motion was denied; and upon motion of the district attorney the court ordered an amendment of the information changing the name to Horton. Defendant contends that the jury having been impaneled to try him upon a charge of assault upon Bettie Norton, he was deprived of the right to a trial by jury of the charge of assault declared by the amended information to have been made on Bettie Horton.

[1] Section 1008 of the Penal Code allows amendment in the discretion of the court at any time after a defendant's plea, where it can be done without prejudice to the substantial rights of the defendant, provided there is neither a change in the offense charged nor a charge of any offense not shown by the evidence taken at the preliminary examination. In *People* v. *White,* 47 Cal. App. 400 [190 Pac. 821], after the jury had been impaneled, but before any evidence was taken, an information naming the prosecutrix as Jennie Carlsen was amended so as to give her correct name, Jennie Larsen; and this was held on appeal to have been a proper exercise of the court's discretion. [2] In the present case, the amendment was not made until the People's case had been presented to the jury and the defendant was called to present his defense. No substantial right of the defendant was prejudiced by the amendment. He was in no way taken

by surprise, nor did he request any continuance because of the correction of the clerical error. The only witnesses for the People were the prosecutrix and her grandmother, Mrs. Cates. Defendant had heard their testimony; and his defense, with himself as the sole witness, consisted of an absolute denial. Moreover, there is no pretense that he was not aware from the very beginning of the identity of the individual in question, however named in the information. The ruling made in the White case should therefore govern here. Reference may be made also to *People* v. *Harrison,* 14 Cal. App. 545 [112 Pac. 733], and the cases there cited.

[3] Upon the record of the trial it is contended that the verdict lacks support in that there is insufficient evidence of guilty intent. In cases of this character intent must necessarily be determined largely by reasonable inferences from the facts placed before the jury. The child, who was motherless, lived with her grandmother, Mrs. Cates, at Wrightwood, in San Bernardino County. On July 3, 1926, at about 6 o'clock in the afternoon, defendant, with the permission of Mrs. Cates, took the child for a boat ride on a lake in the vicinity. As the child testified, after crossing the lake defendant took her into the brushwood and caused her to lie down, lowered her bloomers and engaged in an attempt to indulge himself sexually, but without actual penetration. The grandmother kept a boarding-house at Wrightwood, and when the child reached home Mrs. Cates was busy serving supper to her boarders. She testified that the child came home "whining and crying," and saying she did not want supper, asked to be put to bed. As the child continued to cry, Mrs. Cates went with her to the bedroom, and undressing the little girl, found her bloomers wet and the skin about the private parts "red as fire . . . and looking like she was ready to bleed, and she had a kind of sticky stuff on her"— which led Mrs. Cates to think that the child had been "in poison weeds." Upon the grandmother's inquiry, "What caused this?" the child answered, "I can't tell you, I can't tell you now"; but she said further, "I am all sore and raw, I want you to grease me and put powder on me before I go to bed." This the grandmother did, not suspecting at the time that the child had been maltreated. The little girl complained again the next day, and powder was again applied. About five days later something occurred in the town with

reference to other children which led Bettie to tell her grandmother the story of her boat ride with defendant, and the grandmother immediately caused defendant's arrest. From such evidence the jury undoubtedly drew the inference that there had been an assault by defendant with intent to commit rape, and that inference is amply justified. It was not merely a case of lewd and lascivious conduct under section 288 of the Penal Code, but a case properly cognizable under section 220.

Upon the subject of intent, defendant complains of the following instruction given by the court: "In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence. This intent must be judged by the circumstances connected with the offense. An unlawful act is presumed to have been done with an unlawful intent. A person is presumed to intend the ordinary consequences of his voluntary act. A person must be presumed, and is presumed, to do that which he voluntarily and wilfully does in fact do, and must also be presumed to intend all the natural, probable and usual consequences of his own acts." It is urged that such an instruction does violence to the rule requiring specific intent to be shown.

[4] The first sentence, as to the necessity of union of act and intent, is but the quotation of section 20 of the Penal Code; and as is said in *People* v. *Rowland,* 12 Cal. App. 6, 24 [106 Pac. 428], is not only correct as an abstract statement of law but is given in nearly every criminal case. The next sentence, declaring that intent may be judged from circumstances, accords with the language of the court in *People* v. *Maciel,* 71 Cal. App. 213, 218 [234 Pac. 877]: "All the circumstances surrounding the act furnish the evidence from which the presence or absence of specific intent may be inferred by the jury." (See, also, *People* v. *Bones,* 35 Cal. App. 429, 435 [170 Pac. 166].) [5] The two following sentences in the instruction are presumptions formulated in subdivisions 2 and 3 of section 1963 of the Code of Civil Procedure. Speaking, in *People* v. *Dunlop,* 27 Cal. App. 460, 467 [150 Pac. 389], of an instruction, given in a case of this same character, in language borrowed from subdivision 1 of section 1962, of the Code of Civil Procedure, "a guilty intent is conclusively presumed from the deliberate

commission of an unlawful act," Judge Hart said that while he did not favor the instruction, yet even if not appropriate to the case made by the briefs the language could not, in view of the instructions as a whole, be held so prejudicial as to require a reversal. The same may be said of that portion of the instruction here which is taken from subdivisions 2 and 3 of section 1963 of the Code of Civil Procedure. [6] The next succeeding sentence, "A person must be presumed, and is presumed, to do that which he voluntarily and wilfully does in fact do," is a form of instruction which in a different sort of case was held proper in *People* v. *Moxley,* 17 Cal. App. 466, 470 [120 Pac. 43]. As given in that case, and also in this, the clause hardly does more than give expression to a truism—a man does what he does—and could have occasioned no prejudice.

[7] The language in which such an instruction is usually couched is found in *People* v. *Richardson,* 161 Cal. 552, 564 [120 Pac. 20], and is there followed by the remaining portion of the instruction to which exception is taken by the defendant here. The Richardson case was a prosecution under section 274 of the Penal Code for furnishing drugs with intent to procure a miscarriage, and in a case of that class, as in this, specific intent must be proved. The instruction there criticised read as follows: "A person must be presumed, and is presumed, *to intend to do* that which he voluntarily and wilfully does in fact do, and must also be presumed to intend all natural, probable and usual consequences of his own acts, unless there is evidence direct or indirect to controvert this presumption." In reference to this instruction the court said: "It is not disputed that this is a correct exposition of the law in ordinary cases, but it is urged that the latter part of the instruction is not applicable and is misleading where, as in this case, the intent with which an act is done is the gist of the offense. . . . This particular intent being, as said, the gist of the offense, it was incumbent on the People to establish it as a *fact* by such evidence as would warrant a conclusion to that effect on the part of the jury. (*People* v. *Jones,* 160 Cal. 358 [117 Pac. 176].) But we do not think that the instruction complained of was meant or could have been understood by the jury as requiring or authorizing them to find any such intent in the absence of evidence establishing it to their satisfaction be-

yond all reasonable doubt. This is clear when we examine the charge· as a whole.'' So, also, in *People* v. *Wilson,* 36 Cal. App. 589, 597 [172 Pac. 1116], the court said that such an instruction was not to be read alone but in connection with the entire charge, and particularly the portion which advised the jury that it must find beyond a reasonable doubt that defendant committed the acts charged.

In the present case the jury was told in other instructions, in plain terms, that the state was bound to prove that the defendant assaulted the prosecutrix with the intent to have sexual intercourse with her; that intent must be established like any other fact by acts, conduct, and circumstances; that innocence was to be presumed; that the law raised no presumption against defendant, and every material element necessary to constitute the crime must be proved beyond a reasonable doubt; and that if the element of intent was lacking, the offense had not been proved. The instructions as a whole in this respect did full justice to defendant.

[8] In a case such as the one under review it is not necessary for the evidence to show that the accused intended to gratify lust at all events. The intent is to be gathered from the outward acts of the defendant and the accompanying circumstances, and from those acts and circumstances the jury are to draw rational conclusions as human beings. (*People* v. *Johnson,* 131 Cal. 511 [63 Pac. 842]; *People* v. *Moore,* 155 Cal. 237 [100 Pac. 688]; *People* v. *Onessimo,* 65 Cal. App. 341 [224 Pac. 101].) [9] Evidence of the fact of an assault on the prosecutrix is found in her testimony that the defendant caused her to lie down and disarranged her clothing for carnal purposes (*People* v. *Roach,* 129 Cal. 33 [61 Pac. 574]); and the physical contact which followed, together with the condition of the child which the grandmother subsequently observed, are indications of intended sexual connection. (*People* v. *Fernandez,* 4 Cal. App. 314 [87 Pac. 1112].)

The defense of the accused was not that if an offense was committed it was one which is catalogued under section 288 of the Penal Code. His defense was an absolute denial of any tampering whatever. It is quite evident that the jury disbelieved him and placed credence in the testimony adduced by the People. From that testimony the logical and rational conclusion was that the assault had been committed

by defendant, and that the intent charged was his true and factual intent. In a corresponding case, *People* v. *Collins*, 5 Cal. App. 654 [91 Pac. 158]; the conduct of the defendant as described by the prosecutrix, likewise a child of six years, was quite similar to that in evidence here, and the court there said: "We must suppose that his acts were done with the purpose and desire that would ordinarily characterize the acts of an individual of the male sex when such acts were done with one of the female sex."

Our conclusion is, therefore, that under the circumstances in evidence and the court's charge as a whole, the instruction assailed did not prejudice defendant.

[10] Exception is taken to another instruction which goes, however, to form rather than substance. In giving the instruction as to the province of the jury in determining the credibility of witnesses, the court in the earlier part of the instruction used the masculine pronoun instead of pronouns alternatively masculine and feminine; but in the latter portion of the instruction both forms of pronouns were used. In common parlance the masculine pronoun is frequently used generically; and from the instruction, which in the beginning told the jury to consider all the circumstances under which *each witness* testified, the jury undoubtedly understood the language of the court to apply to every witness heard and not to be directed in any part exclusively to the defendant, the sole male witness in the case. The entire instruction is as follows: "The jurors are the sole judges of all questions of fact, and of the credibility of witnesses. The jurors may believe the whole or any part of the evidence of the witness, and may disbelieve the whole or any part of it, as may be dictated by the exercise of their sound judgments as reasonable men. You should carefully scrutinize all the testimony given, and in doing so consider all the circumstances under which each witness has testified; his degree of intelligence; his manner while on the stand; the relation he bears to the case, and the manner in which he might be affected by a verdict; his apparent desire to confine himself to the truth, or to color his statements; his apparent tenacity or lack of memory; the extent to which he is contradicted or corroborated by other evidence, if at all; and any other considerations that tend to throw light upon the question of his veracity or credibility; and determine

82 Cal. App.—32

the amount of credence to which each witness and each statement is entitled at your hands as reasonable and intelligent men. A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he or she testifies, by the character of his or her testimony, or by evidence affecting his or her character for truth, honesty or integrity, or both, or his, or her, motives, or by contradictory evidence, and the jury are the exclusive judges of his, or her, credibility."

It would be hypercritical to say that any miscarriage of justice resulted from the form of this instruction.

[11] The only other instruction attacked is the following portion of an instruction numbered 9 in the clerk's transcript: "You are instructed that while it is the law that the testimony of the prosecutrix should be carefully scanned, still this does not mean that such evidence is never sufficient to convict. If you believe the prosecutrix it is your duty to render a verdict accordingly." An instruction in the same terms was held in *People* v. *Johnson,* 106 Cal. 289 [39 Pac. 622], and *People* v. *Barker,* 137 Cal. 557 [70 Pac. 617], to furnish cause for reversal. Those cases were decided, however, before the adoption of section 4½ of article VI of the constitution. In the same instruction which contained the language above quoted the court also said to the jury: "It is sufficient, if you believe from her evidence and all other testimony and circumstances in proof of the case, beyond a reasonable doubt, that the crime charged has been committed." In view of this curative instruction in close juxtaposition with that assailed, and in view also of the purpose and intent of the constitutional amendment, disparaging reversal for mere technical misdirection while encouraging at the same time the due and orderly administration of justice, we are of the opinion that the case made against defendant is so strong and clear, and the instructions as a whole so fair, that the particular sentence complained of did not result in a miscarriage of justice, and should not occasion a reversal of the judgment of conviction.

The judgment and the order denying the motion for a new trial are affirmed.

Works, P. J., and Thompson, J., concurred.