[Crim. No. 503. Fourth Appellate District.—October 14, 1937.]

THE PEOPLE, Respondent, v. EDWARD M. HENRY, Appellant.

Borton, Petrini & Conron and Renwick Thompson for Appellant.

U. S. Webb, Attorney-General, Alberta Belford, Deputy Attorney-General, Thomas Scott, District Attorney, and Norman Main, Deputy District Attorney, for Respondent.

JENNINGS, J.—The defendant herein was accused by an information containing two counts of having committed two criminal offenses. The first count charged the commission of the crime of negligent homicide and the second alleged that he was the driver of an automobile which was involved in an accident resulting in injury to a designated person and that he did not immediately thereafter stop such vehicle at the scene of the accident and give the information required by law and render reasonable assistance to such injured person.

Upon arraignment the defendant entered a plea of not guilty to each of said offenses and was thereafter tried before a jury which returned a verdict of acquittal as to the charge of negligent homicide and a verdict of conviction as to the accusation that the defendant had failed to stop and render aid to a person who was injured in an accident wherein the automobile which the defendant was driving was involved. Defendant's motion for a new trial was denied and judgment whereby it was ordered that he be confined in the state prison was thereupon pronounced against him. From this judgment and from the order denying him a new trial the defendant appeals.

The accident which caused the filing of the information occurred at a point about 15 miles south of the city of Bakersfield on State Highway No. 99 at approximately 5:30 in the afternoon of January 3, 1937. The evidence showed that the defendant, who was driving a Plymouth coupe, left the city of Visalia about 2:30 P. M. on the above-mentioned day and that he proceeded south en route to his home in the city of Los Angeles. He arrived in Bakersfield about 4 P. M. He paused in the last-mentioned city for approximately an hour, during which time he consumed a sandwich and several drinks which contained intoxicating liquor. About 5 P. M. of said day he resumed his journey. At the point where the accident took place two trucks were parked on the west side of the highway whereon defendant was driving. The highway at this point consists of a paved section 20 feet in width and a shoulder or apron of cut-back asphalt concrete 6 feet wide on each side of the paved portion of the roadway. The above-mentioned trucks were parked parallel to the highway, end to end. One of them was a large refrigerator truck which was headed north. The other truck was likewise a large truck but was flat and had stakes on the sides and end boards. The latter truck was headed south. The distance from the center line of the highway to the east wheels of both trucks was about 14 feet. At the time the accident occurred the traffic moving along the highway in both directions was heavy. It was then dusk and the lights on motor vehicles which were on the highway were illuminated. This was true of the lights on the refrigerator truck and of the lights on defendant's automobile. The headlights of the flat truck were not lighted but its clearance lights were illuminated. The evidence showed that the truck which was headed south

had broken down and that the refrigerator truck had been dispatched to the scene of the breakdown so that the merchandise which was being transported on the flat truck might be transferred to the refrigerator truck. The refrigerator truck was being backed to the rear of the flat truck for the purpose of facilitating the transfer when the accident occurred. At this time, Owen E. Foley, who was the driver of the flat truck, was engaged in procuring flares from the flare box which was on the left-hand side of his truck behind the driver's cab. These flares were to be lighted and placed along the highway to give warning of the parked trucks to motorists. There was no eye-witness to the events which thereafter occurred. Circumstantial evidence which was produced indicated that the right front of the automobile which the defendant was driving on the west side of the highway collided first with the refrigerator truck, sideswiping it, and next with the left side of the flat truck, and that defendant's automobile struck Foley and carried him for a distance of about 75 to 100 feet before dropping him at the side of the highway. As a result of the injuries which Foley received in the collision he died soon after his body was discovered. The defendant continued on his way south after the collision without stopping his automobile, so far as appears. About 35 miles south of the scene of the collision he was halted by a member of the California Highway Patrol and was apprehended. At this time, which was 6:42 P. M., it was observed that the defendant's automobile had been damaged. The glass in the right front headlight was broken, the light was not burning and the headlight was bent back in the direction of the cowl. The license plate which was carried at the right front side was likewise bent. The right front hood of the car was dented as was also the right front fender. There were also other dents and scratches on the right side of the automobile. When the defendant was stopped he was asked to step out of his car. He complied with the request and the arresting officer then perceived that he was to some extent unsteady on his feet and that his breath had an odor of alcohol. It was also noted that he had evidently vomited, as indicated by certain marks which then appeared on his clothing and shoes. The defendant was asked if he had drunk any intoxicating liquor. He first denied that he had, but later admitted that he had some drinks at Bakersfield. The damaged parts of his automo-

bile were exhibited to him and he was asked as to how the damage was caused. He answered that a truck had backed into his car near Bakersfield. Inquiry as to whether he had secured the name of the truck driver or the license number of the truck brought the response that he had not because he was in a hurry to get home and therefore proceeded on his way without attempting to secure the suggested information.

It was not contended during the trial nor is it contended on this appeal that · the above-narrated evidence, much of which was circumstantial, was insufficient to show that the defendant's automobile was involved in an accident and that it struck Foley, thereby causing the injuries which resulted in the man's death. The defendant testified in his own behalf and stated that he remembered driving along the highway after he left Bakersfield to a point which he identified as the place where a road to the town of Arvin takes off from the highway and that from this point, which is approximately three miles north from the scene of the accident, he remembered nothing until he was stopped by the traffic officer near Gorman.

The last-mentioned testimony forms the basis for the first contention advanced on this appeal. It is pointed out that the offense of failing to stop and render assistance is not made out unless it is shown that the person accused of the offense actually knew that the automobile which he was driving had struck someone. It is next observed that the defendant's testimony that he had no recollection of anything that occurred between the Arvin road intersection and Gorman was not contradicted. The third step in this argument is that, since the defendant's testimony is uncontradicted, the necessary element of knowledge was not proven, hence the jury's verdict of guilt is not supported by the evidence and the judgment which was rendered in conformity with the verdict must be reversed.

With respect to the contention thus ingeniously presented it may be remarked that the defendant's testimony was not directly rebutted nor contradicted for the obvious reason that it could not be. The defendant was alone and is the only person who could state whether or not he actually knew that the automobile which he was driving had been involved in an accident. However, it cannot be the law that, because the driver of an automobile declares that he has no recollection of anything that may have taken place for an interval

of time during which the circumstantial evidence overwhelmingly indicates that his automobile was involved in an accident whereby another person was injured or killed, the matter must be considered determined by such testimony. If such were the rule section 480 of the California Vehicle Code is nullified for all practical purposes. The jury was not, however, bound to accept as true the defendant's statement in the face of the extensive damage which the evidence showed his automobile had sustained and in the face of the proven fact that the body of Foley was picked up and carried for a distance of 75 to 100 feet before it was dropped by the automobile which struck him and which the evidence showed was the automobile which the defendant was driving. That the defendant did not know that he had struck a human being is inconceivable in view of the above facts which were developed by the evidence. (*People* v. *Hurley*, 13 Cal. App. (2d) 208, 212 [56 Pac. (2d) 978].) Furthermore, another significant bit of evidence which conveyed definite refutation of the defendant's story deserves mention. As above stated, when the defendant was apprehended near Gorman and the damaged condition of his car was called to his attention and he was asked how it had occurred he replied that a truck had backed into his automobile near Bakersfield. His answer at that time indicated that he did have knowledge that his car had been involved in an accident and that his capacity of recollection was then functioning. From this fact alone the jury may well have concluded that the defense of temporary amnesia extending back beyond the time when the collision occurred was conveniently fabricated for the express purpose of avoiding the penalty which the law might impose by way of punishment for his dereliction. Under all the facts and circumstances disclosed by the record we are not prepared to announce that such a conclusion was improper.

The second contention advanced by the defendant as a reason for the reversal of the judgment has to do with the admission of certain evidence by the trial court. During the presentation of defendant's case a physician was called as an expert witness in his behalf. One of the chief reasons for summoning this witness was to overcome the effect of certain evidence produced by the prosecution as a part of its case. The plaintiff's evidence established that after the defendant was arrested and at about 9:30 P. M. on January

3, 1937, a sobriety test was administered to him at the Kern General Hospital in the city of Bakersfield by a practicing physician in the last-mentioned city. It was shown that one of the features of the test consisted of the taking from defendant of a sample of his blood which was subjected to chemical analysis for the purpose of determining the quantity of alcohol contained therein. The analysis thus made showed that the defendant's blood then contained .18 of 1 per cent of alcohol and the state's medical witness testified that the result obtained from the blood anaylsis showed that the defendant was affected by alcoholic stimulation. In rebuttal of this evidence the defendant's medical witness testified on direct examination that it was the consensus of opinion of medical experts that there is no intoxication when an analysis of the blood content of an individual shows the presence therein of less than .2 of 1 per cent of alcohol. On cross-examination this witness stated that by way of preparation for the testimony which he expected to give in the case he had consulted certain named medical texts. He was asked whether or not he was familiar with a certain article which appeared in the January, 1937, issue of the "Medico-Legal Review of London" in which article certain recent work done by the British Medical Association was discussed. The article to which his attention was thus called was then exhibited to the witness, who replied that he had not read it. Over the objection of defendant's counsel that the article constituted hearsay evidence the prosecutor was permitted to read it to the jury and the witness was thereupon subjected to cross-examination with respect to the contents of the article. The same witness was cross-examined with respect to testimony which he had given on direct examination regarding the rate of decrease in alcoholic content in the blood of heavy drinkers, moderate users of intoxicating liquor and total abstainers. His attention was then directed to a certain article with an accompanying diagram which appeared in the March, 1935, issue of a journal entitled "Archives of Neurology and Phychiatry" and he was asked whether or not he had read the article prior to giving his testimony. Upon receiving a negative reply to the inquiry and over the objection of defendant's counsel that the diagram appearing in connection with the article was hearsay and incompetent the prosecutor was allowed to exhibit the diagram to the jury and it was admitted in evidence.

The basis for the complaint which is here urged to the rulings of the trial court admitting the above-described evidence is, as was contended during the trial, that both the first-mentioned article and the diagram were pure hearsay and that their reception in evidence constituted a flagrant violation of the familiar rule excluding hearsay evidence. It will here be assumed without deciding the question that the defendant's contention is correct and that the court erred in admitting the evidence. Indulgence in this assumption does not, however, necessarily lead to the conclusion that the judgment must be reversed. Section 4½ of article VI of the California Constitution declares that no judgment shall be set aside for improper admission of evidence unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. Examination of the entire record has failed to produce a conviction that the error which it is assumed the trial court committed in admitting the evidence resulted in a miscarriage of justice. It may be proper to observe that the argument of the plaintiff that the claimed error was cured by the jury's verdict of acquittal of the charge of negligent homicide has not contributed materially to arriving at the conclusion that the criticized action of the trial court is not a sufficient reason for reversing the judgment. While it is true that the element of intoxication of the defendant was alleged only with respect to the charge of negligent homicide, study of the record demonstrates that this element also entered into the defendant's trial on the charge of failing to stop and render assistance. The defense to the latter accusation was, as heretofore noted, lack of knowledge by the defendant that his automobile was involved in a collision by reason of an entire failure of memory which in the opinion of defendant's medical expert could have been caused by nervous shock. The prosecution sought to overcome the defense thus advanced, first, by evidence of circumstances surrounding the accident which indicated that the defendant must have known that his car was involved in an accident in which a person was injured and, second, that the defendant's claimed amnesia, if it had any existence in fact, was caused by his voluntary indulgence in intoxicating liquor to such an extent that he was intoxicated when the accident occurred. It is apparent that the element of intoxication was a factor which entered into the defend-

ant's trial on both charges and we cannot therefore agree with the plaintiff's contention that, assuming error on the part of the trial court in its reception of the evidence under consideration, such error was necessarily cured by the verdict of acquittal on the charge of negligent homicide. We are nevertheless impelled to the conclusion, from a review of the entire record, that the error which it is assumed the trial court committed in admitting the evidence did not result in a miscarriage of justice.

In reaching this conclusion it will be assumed that the jury may have accepted the criticized evidence and from it, together with the fact that the blood test taken at 9:30 P. M. showed an alcoholic concentration of .18 of 1 per cent may have determined that the defendant was in fact intoxicated when the collision took place at 5:30 P. M. However, in order that this assumption may become important in our analysis of the evidence it must further be assumed that the jury gave full credence to the defendant's testimony that he had no recollection of anything that happened in an interval of time which began some moments before he arrived at the point of collision and ended abruptly when he was stopped near Gorman more than an hour after the collision had occurred. As heretofore suggested the defendant's story when it is projected against the background of the circumstances which surrounded the unfortunate affair is so fantastic that it must be characterized as incredible. Particularly significant in this regard is the evidence which showed that after he was stopped and the very apparent damage suffered by his car was exhibited to him and he was asked how this damage had occurred, he did not then declare that he did not know or could not recollect. On the contrary, he betrayed a very definite capacity of recollection by replying that a truck had backed into him near Bakersfield and an inquiry as to whether or not he had secured the license number of the truck or the name of the truck driver elicited the response that he had made no effort to secure the suggested information because he was in a hurry to get home. In the face of this testimony, uncontradicted except by the defendant's testimony that he did not remember telling the arresting officer that a truck had backed into his car, it is inconceivable to a reader of the cold record that the jury could have believed the defendant's story that he had no recollection of anything that happened as he proceeded along the

highway from the point where the Arvin road took off to Gorman. Obviously, if the jury did not accept the defendant's story of temporary total amnesia, the question of whether or not the defendant was intoxicated becomes relatively unimportant. Since we entertain a settled conviction that the members of the jury could not, in the face of all the damning circumstances that appeared in evidence, have believed the story, it follows that we are convinced that the error in admitting the criticized evidence, assuming as we have done that error was thereby committed, could not have contributed in the slightest degree to the verdict that was returned. In our opinion, if the evidence, assumed to have been erroneously admitted, had been rejected the defendant must nevertheless have been convicted.

The defendant complains that the trial court gave an instruction on flight which it is contended was peculiarly prejudicial to him because of the fact that flight is an essential element of the offense of which he was convicted. Hence it is argued that the criticized instruction in effect advised the jury that if the necessary element of flight was established such showing would be evidence tending to establish another essential element of the offense, to wit: knowledge.

With reference to the complaint thus registered it may first be observed that the instruction which the court gave is in the precise language specified by section 1127c of the Penal Code and that this statute expressly provides that "In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially" in the language which the trial court here employed. Second, it may properly be observed that the defendant was being tried for the commission of two distinct offenses and that it may not be urged that flight is an essential element of the crime of negligent homicide. As to the last-mentioned offense the fact of flight was therefore a matter which the jury was entitled to take into consideration under an instruction which followed the precise language of a statute expressly sanctioning the giving of such an instruction. (*People* v. *Blake,* 129 Cal. App. 196, 204 [18 Pac. (2d) 399]; *People* v. *Luce,* 135 Cal. App. 1, 3 [26 Pac. (2d) 501]; *People* v. *Wier,* 20 Cal. App. (2d) 91 [66 Pac. (2d) 703].) Third, it must be remarked that in several of the many instructions which the court gave the various elements of the offense of failing to stop and render

aid were carefully explained to the jury and in particular it was repeatedly called to the jury's attention that knowledge by the defendant that a person had been injured in an accident wherein his automobile was involved was a necessary element of the offense which the prosecution was required to prove beyond a reasonable doubt. We think, therefore, that the instruction regarding flight, even if its effect is restricted to the last-mentioned offense, was not prejudicial to the defendant when the entire body of the court's instructions is taken into consideration.

■ Defendant also complains of another instruction which the trial court gave whose language is as follows:

"In every crime or public offense, there must exist a union or joint operation of act and intent, or criminal negligence; but when the act committed by the accused is of itself an unlawful act, the law, in the first instance, presumes the criminal intent, and the *onus* or burden of proof, falls upon the defendant to show the absence of criminal intent."

As an abstract statement of the law the instruction is not in all respects correct. An almost identical instruction was held to be improper in *People* v. *Maciel,* 71 Cal. App. 213, 217 [234 Pac. 877], on the ground that it violated the fundamental rule that whenever a specific intent is an essential ingredient of an offense no presumption of law can arise to obviate the requirement that the prosecution shall prove such intent just as it is bound to prove any other fact which is a necessary element of the crime. To the same effect is the decision in *People* v. *Flores,* 86 Cal. App. 235, 237 [260 Pac. 822].

Defendant's contention that the instruction was prejudicial to him as to the offense of which he was convicted because its effect was to dispense with proof by the prosecution of the essential element of knowledge that a human being had been injured or killed and more particularly because it advised the jury that a presumption of knowledge arose from the very commission of the act is, however, not impressive. The instruction makes no reference to knowledge and it may not be declared that knowledge and intent are synonymous terms. The two words convey entirely different concepts. Knowledge means acquaintance with fact; the act or state of understanding. Intent is defined as intending or purposing. A specific intent is not a necessary element of the crime of which the defendant was convicted. As here-

tofore indicated, the jury was repeatedly advised by other instructions that knowledge is an essential element of the offense charged in the second count which the prosecution was required to prove beyond a reasonable doubt. We think, therefore, that when the instructions are considered in their entirety it may not be declared that the jury could have been misled by the instruction or that the giving of it constituted error which demands reversal of the judgment. (*People* v. *Stephens*, 29 Cal. App. 616, 622 [157 Pac. 570]; *People* v. *Jensen*, 82 Cal. App. 489 [255 Pac. 781].)

The defendant further complains because the written instructions which the court gave, including certain instructions which were refused, were taken to the jury room and were considered by the jury in its deliberations. Apparently during the absence of court and counsel the jury expressed a desire to have the court's written instructions and the bailiff took them to the jury room. Included among the instructions thus taken were two which related to a plea of former jeopardy which the defendant had originally entered but later withdrew and as to which no evidence was presented. These two instructions were blocked out and marked through with diagonal pencil lines. Defendant's complaint with respect to the deleted instructions is without merit. In the first place, it is obvious to the most casual observer that the two instructions had been eliminated. In the second place, not an iota of evidence was produced during the trial with reference to the plea of former jeopardy and no mention was made of it by the court when the jury was orally instructed. It may be assumed that the jury was composed of persons of ordinary intelligence and it is inconceivable that a jury thus composed could have given any heed to the instructions so obviously deleted. In the third place, it is made clear by the verdict that the jury did not consider the eliminated instructions. The two instructions advised the jury that the defendant had entered a ·plea of former jeopardy as to each charge contained in the information and that if the jury should find that the plea was correct it should render a verdict accordingly, but that if the jury should find that the defendant had not theretofore been placed in jeopardy a verdict denying the plea should be returned. The forms of verdict submitted to the jury contained no mention of the plea of former jeopardy and neither verdict which was returned contained any reference thereto.

Finally, if it be conceded that the jury could conceivably have considered the eliminated instructions and did consider them no prejudice is shown to have resulted to the defendant thereby. The reasonable inference derivable from a reference to a plea of former jeopardy would have been that the defendant had once been placed in danger of punishment for the identical offenses for which he was being prosecuted and it is a familiar principle comprehensible to the laity that a person may not be twice prosecuted for the same offense. The effect of a reference to a plea of former jeopardy, assuming that it was considered at all, must therefore have been favorable to the defendant.

The defendant's final complaint on this appeal is that the trial court arbitrarily refused to entertain an application for probation. The record does not sustain the objection. Examination of the transcript discloses that after the motion for a new trial was denied, defendant's counsel stated that he wished to make application for probation and that after some discussion as to whether or not it was then the proper time for such an application to be made had ensued, the court summarily denied the application for the reason that he thought the case was not one wherein probation should be granted. The record further shows that at a later time and prior to pronouncement of judgment defendant's counsel stated that he wished to renew the application for probation with the understanding that if it should be denied such action would be without prejudice to a renewal of the application in the event the judgment should be affirmed on appeal. The trial court thereupon again denied the application with the express proviso that such denial was without prejudice to a renewal of the application upon determination of an appeal from the judgment.

From the foregoing it is apparent, first, that there was no request by defendant's counsel for permission to file a formal application for probation and hence no denial of such a request and, second, that the statement of defendant's counsel to the effect ''that he would like to make application for probation for the defendant'' was considered by the court to be an application for probation which the court summarily denied, giving his reasons for the denial at some length. There was then no arbitrary refusal of permission to present an application for probation but on the contrary a denial of an oral application by the judge who had presided during

the trial of the action and was familiar with all the facts including the defendant's character and his reputation for the various traits involved in the offense of which he was convicted which was very fully developed by the testimony of a large number of witnesses. Section 1203 of the Penal Code expressly authorizes the summary disposition of an application for probation and it is impossible to find anything in the record which indicates that the trial court abused the very wide discretion which it possessed in passing upon the application. (*People* v. *Lippner*, 219 Cal. 395, 400 [26 Pac. (2d) 457]; *People* v. *Martin*, 114 Cal. App. 337, 347 [300 Pac. 108]; *People* v. *Judson*, 128 Cal. App. 768, 774 [18 Pac. (2d) 379]; *People* v. *Howe*, 1 Cal. App. (2d) 518, 520 [36 Pac. (2d) 820].)

The judgment and order from which this appeal has been taken are and each of them is affirmed.

Barnard, P. J., and Marks, J., concurred.