Filed 8/11/21  P. v. Mehta CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PRATITI RENEE MEHTA,<br><br>    Defendant and Appellant. | G058679<br><br>(Super. Ct. No. 18WF0972)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Julian W. Bailey, Judge.  Affirmed.

Coimbra Law Firm and Joseph L. Coimbra for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Ksenia D. Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Pratiti Renee Mehta hit a bicyclist with her Mercedes, causing him to sustain major injuries. She did not stop, attempt to assist him, or call for help; instead, she drove to work and went about her day. That afternoon, after learning the police had photographs of her car, she called the police and claimed she had seen a different car hit the victim. A jury convicted her of a hit-and-run, providing false information to a peace officer, and unsafe operation of a motor vehicle.

Mehta claims her hit-and-run conviction fails for lack of sufficient evidence that she knew she hit the victim; she further asserts the trial court judge was biased against her. We reject these contentions for the reasons discussed below and affirm the judgment.

## FACTS

The accident in question occurred on the morning of March 20, 2018. Mehta, a 33-year-old graduate of the Paul Merage School of Business at the University of California Irvine (UCI), was working as a customer relationship manager at a healthcare company in Irvine. She had a meeting that morning at 9:00 with the company's key stakeholders to discuss a major project she was managing.

Mehta was driving to work in her 2016 Mercedes SLK 300 at about 8:00 a.m.; she was northbound on Santa Ana Avenue in Costa Mesa listening to "pretty loud" music. Mehta noticed a bicyclist passing on her right, traveling in the same direction. She then approached the intersection at Bristol Street, where she planned to turn right, and said she assumed the bicyclist was also about to turn right as she was making her turn. As she turned right onto Bristol, the right rear panel of her car hit the bicyclist, who flew off his bike and tumbled to the ground. The bicyclist suffered a compound fracture to his leg which required surgery. Two witnesses heard the crash and the victim's screams.

2

After turning onto Bristol, Mehta looked in her rearview mirror and saw the bicyclist lying in the middle of the intersection. According to Mehta, she assumed he had fallen off his bicycle. She claimed she did not know she hit him, and she could not hear anything other than her loud music. Although Mehta said she was worried about the bicyclist, she did not stop or call the police. She thought someone else would call 911, so she kept driving to work, checked her e-mails, and then attended her 9:00 a.m. meeting as planned.

Unbeknownst to Mehta, a security camera at a nearby gas station captured the accident on video, which shows Mehta's Mercedes colliding with the bicyclist. The police took still images of Mehta's Mercedes from the security camera footage and posted two photos on social media to try to locate the driver of the car.

During her lunch break later that day, Mehta went outside to her car, checked her NextDoor app, and saw the police had posted photographs of her car at the scene of a hit-and-run accident. She texted her boyfriend, "So I have a big problem," "The cyclist I didn't stop for," "The cops think I hit him," "[a]nd [they] have posted my car to help identify me."

A few minutes later, Mehta contacted the police; she told them she did not hit the bicyclist and instead claimed she saw an SUV hit him. (At trial, Mehta conceded "that was an incorrect statement.") The police investigator informed her the collision was captured on video, which showed her car hitting the bicyclist, and he asked her to bring her car to the police station for inspection. Mehta said she would; she did not. Instead, she began to research lawyers.

That afternoon, Mehta texted her sister, "I feel like if they have evidence, they would have found me." "I knew he wasn't going to stop, so I slowed down." "I know I didn't stop either. That's just awful. I had a big meeting to prep for, and I was worried." "I'm also worried about the guy being a bum." "It's his fault too, though. He didn't stop. The crosswalk light didn't turn green. He just zoomed past." She later

3

explained her comment about the bicyclist being "a bum" as meaning she was afraid he would blame her as "a quick way to make some money."

Mehta texted her boyfriend, "I'm nervous. I'm brown, dude." She later explained to the jury, "I always worry about being in trouble with the law because I'm a person of color, and there's a lot of crimes against people of color."[1]

At trial, Mehta testified she did not see any damage to the right side of her vehicle. However, the police officer who inspected Mehta's car observed damage consistent with a collision with a bicycle. Mehta also texted a colleague on the day of the accident, "I have a scratch on that side."

The crash data retrieval system in Mehta's Mercedes did not record a collision. But according to the police investigator, who has undergone training on crash data retrieval systems, the absence of a record of a collision was not surprising because a glancing blow or sideswipe would not be significant enough to create an entry.

A jury convicted Mehta for failure to perform a legal duty following a vehicle accident that caused injury to another person (Pen. Code, § 20001, subd. (a)); providing false information to a peace officer (Veh. Code, § 31); and unsafe operation of a motor vehicle causing great bodily injury (Veh. Code, § 21070).[2]

The trial court committed Mehta to the Department of Corrections and Rehabilitation for 90 days and ordered her to undergo a diagnostic study under Penal Code section 1203.03. It later sentenced her to two years in state prison for the

---

[1]     The trial court was troubled by Mehta's insinuation that she was disadvantaged because of her ethnicity. At sentencing, the judge noted her comment made him "cringe," considering Mehta is "an intelligent, highly educated, productive person" who has "lived in privilege—Newport Harbor High School, UCI, and grad school at UCI."

[2]     The jury also convicted Mehta of making an unsafe turning movement (Veh. Code, § 22107), but the trial court later dismissed that count as a lesser included offense.

4

hit-and-run, suspended and with three years of supervised probation; six months in county jail for providing a false statement to a peace officer, to run concurrently; and 95 days in county jail for making an unsafe turn, to run concurrently, suspended. Mehta appealed.

## DISCUSSION

1.    *Substantial Evidence of Mehta's Knowledge of the Accident*

As noted, the jury convicted Mehta of violating Vehicle Code section 20001, subdivision (a)—commonly known as the hit-and-run statute—which provides that "[t]he driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004." "Vehicle Code sections 20003 and 20004, in turn, require the driver to stop and provide identification and render aid to the victim, as well as to report the accident to authorities if there is no police officer present. Failure to comply with these requirements is a criminal offense. (Veh. Code, § 20001, subd. (b)(1) & (2).)" (*People v. Martinez* (2017) 2 Cal.5th 1093, 1102.) "'"[T]he act made criminal"' under the statute '"is not the 'hitting,' but the 'running.'"'" (*Ibid.*)

One of the elements of a Vehicle Code section 20001 is that the driver had knowledge of a collision with a person when the driver failed to stop. (*People v. Harbert* (2009) 170 Cal.App.4th 42, 53 (*Harbert*); CALCRIM No. 2140.) Mehta contends her hit-and-run conviction must be reversed because there was insufficient evidence that she knew she was involved in an accident at the time it occurred. We disagree.

Mehta denied realizing she had been in an accident. But her denial is not dispositive; a driver's knowledge of an accident may be established by circumstantial evidence and by examining the circumstances of the accident. (*Harbert, supra,* 170 Cal.App.4th at pp. 53-55; see *People v. Kidane* (2021) 60 Cal.App.5th 817, 825 (*Kidane*)

5

["Constructive knowledge of injury satisfies the statute"]; *People v. Henry* (1937) 23 Cal.App.2d 155, 159-160 [driver's alleged lack of recollection of accident is not dispositive where circumstantial evidence overwhelmingly indicates his automobile was in an accident].)

In this case, there was substantial circumstantial evidence Mehta was aware of the accident at the time it occurred. Among other things, (1) Mehta admitted she saw the bicyclist on her right immediately before the accident and then saw him lying in the intersection immediately after the accident; (2) two witnesses heard the crash and the bicyclist's screams, suggesting both were loud; (3) Mehta admitted she was concerned the bicyclist was "a bum" who would tell the police she hit him as "a quick way to make some money"; (4) after seeing photographs of her car in the police's social media posts a few hours later, Mehta called the police to falsely report it was someone else who hit the bicyclist; (5) the damage to Mehta's car was consistent with a collision with a bicycle; and (6) Mehta's text messages to her boyfriend and sister suggest she was aware she was involved in the accident and was concerned she would be apprehended.[3] A rational jury could readily conclude from this circumstantial evidence that Mehta was aware of the collision immediately after it happened.

Mehta insists her text messages, which she sent over five hours after the collision, are too remote in time to establish she knew of the accident when it occurred; she argues the damage and sound from the accident were insufficient to establish such knowledge; and her vehicle's crash data retrieval system did not record a collision. In

---

[3] At no point in Mehta's opening brief did her counsel quote from or describe the content of the relevant text messages that Mehta sent to her boyfriend or sister on the day of the accident. Those were a critical part of the prosecution's case, and their omission from Mehta's opening brief was a violation of rule 8.204(a)(2)(C) of the California Rules of Court. We remind counsel of his obligation to accurately and fairly include *all* critical facts, not just those that support his client's appeal.

6

other words, she asks us to reweigh the evidence.  Her argument betrays a fundamental misunderstanding of this court's role.

"It is well established that in resolving a question of substantial evidence in a criminal case, our role 'is a limited one.'  [Citation.]  'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'  [Citation.]  '[W]e must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'  [Citation.]  It is not within the scope of our review to reweigh the evidence or to make determinations based on viewing isolated bits of evidence.  '[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.  [Citation.]  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.'"  (*Kidane*, *supra*, 60 Cal.App.5th at p. 824.)  Applying those standards here, and deferring to the jury's credibility determinations as we must, we conclude Mehta's hit-and-run conviction is supported by substantial evidence.

2.    *Judicial Bias*

Mehta next contends the trial court judge was unfairly biased against her.  According to Mehta, the court was "silent" when the prosecutor "deliberately misstated facts" about the damage to the car, yet "scolded" Mehta for her responses to those facts; the court's decision to refer Mehta for a psychological evaluation pursuant to Penal Code section 1203.03 was driven by misogyny and racism; and during the sentencing hearing,

7

the court mentioned Mehta's childhood sexual abuse (which Mehta had disclosed in her sentencing memorandum as a potential mitigating factor), despite her request that the court not mention that abuse in her parents' presence.

As an initial matter, Mehta forfeited any claim of judicial bias by failing to raise the issue in the trial court. "As a general rule, a specific and timely objection to judicial misconduct is required to preserve the claim for appellate review." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1320.) A "[d]efendant may not go to trial before a judge and gamble on a favorable result, and then assert for the first time on appeal that the judge was biased." (*People v. Rodriguez* (2014) 58 Cal.4th 587, 626.) Mehta insists she should be excused from this general rule because an objection to the alleged misconduct would have been futile. We have reviewed the record, however, and see nothing to suggest an objection would have been futile.

In any event, even if we were to ignore Mehta's forfeiture and address her bias argument, we would find it without merit. The test is not "'whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.'" (*People v. Snow* (2003) 30 Cal.4th 43, 78.) Applying that standard here, and having reviewed the portions of the record cited by Mehta, we find no indication the trial court was biased, much less that Mehta was denied a fair trial.

## DISPOSITION

The judgment is affirmed.


                                        GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.