Thomas Conners, complainant-appellant,

*v.*

Margaret Murphy, administratrix of the estate of Bridget English, deceased, and the Morris County Savings Bank, a corporation, defendants-respondents.

[Submitted May 28th, 1926.   Decided October 18th, 1926.]

1. A gift *inter vivos*, to be effective, must place the thing donated beyond the control of the donor.

2. The delivery of a check by the maker thereof to the payee thereof, with a donative intent, and its endorsement by the payee and deposit in bank to the payee's credit in the presence of the maker, will constitute a delivery thereof and a valid gift of the fund represented by such check.

3. The test of mental capacity to make a gift is that the donor shall have ability to understand the nature and effect of the transaction.

4. The donor presented himself to a bank, and, unaided, instituted and carried through to completion the banking transaction which resulted in a gift. The bank officer with whom he dealt testified that his mind was clear, his talk intelligent, and his directions plain. His personal physician testified that, at the time, his mind was clear and he had capacity to transact the business. *Held*, that these undisputed facts and testimony justified the conclusion that he had the mental capacity to make the gift, even though he was seventy years of age and somewhat enfeebled in health.

5. The fact that the donor of a gift was one of a number of boarders living in the boarding house kept by the donee is not sufficient to raise a suspicion of fraud or undue influence, in the absence of circumstances showing a relation of trust and confidence. And where the parties are of about equal age and mental capacity, and their relations are such as to indicate that they dealt on terms of equality—there being nothing to show superior knowledge of the matter derived from a fiduciary relation or overmastering influence upon the part of the donee, and nothing to show mental weakness or dependent confidential relation upon the part of the donor—the transaction is presumed to be valid, and it is not incumbent upon the donee to show affirmatively that no fraud or undue influence was used.

6. Where there is no relation of trust and confidence existing between the donor and the donee, and, considering the donee's age, station in life, and fortune, nothing to indicate that he impoverished himself or gave away so much of his estate as to leave himself an object of charity, his gift of $5,356.90, which left him $6,381.79 in bank, will not be set aside merely because of lack of proof of competent and independent advice.

7. Section 6 of the Evidence act (*Comp. Stat. p. 2223*) only renders a complainant, otherwise incompetent, competent to a limited extent, and does not allow him to testify generally. His evidence must be limited to the disproof of so much of the defendant's answer as is responsive to the allegations of the complainant's bill.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder.

*Mr. Leon E. Cone,* for the appellant.

*Mr. David F. Barkman,* for the respondents.

The opinion of the court was delivered by

TRENCHARD, J.

This is complainant's appeal from a decree dismissing his bill, filed June 10th, 1925, against the administrator of Bridget English, deceased, and the Morris County Savings Bank, to recover moneys which complainant had transferred to Mrs. English in her lifetime.

We think that the bill was rightly dismissed.

At the hearing it appeared without dispute that the complainant, accompanied by Mrs. English, went to the Morris County Savings Bank on December 18th, 1923, and said to

the paying teller that he desired to transfer $5,356.90, standing to his credit in one of his two accounts therein, to Mrs. English, and that was done.

The complainant first contends that this was not a gift because "there was never any delivery." We think there was a delivery. Of course a gift *inter vivos* to be effective must place the fund donated beyond the control of the donor. Here that was done. It appeared that the complainant made out a check to Mrs. English for the amount of the account; that it was endorsed by her and, in his presence, put to her credit, and a bank book was delivered to her which was found in her possession at the time of her death. The intention to make a gift is not questioned. Such delivery of the check by the maker thereof to the payee thereof with a donative intent, and its endorsement by the payee and deposit to the payee's credit in the presence of the maker, constitutes a delivery thereof and a valid gift of the fund represented by such check. *Prov. Insurance for Savings* v. *Sisters of St. Francis, 87 N. J. Eq. 424; affirmed, 88 N. J. Eq. 349; Betts v. Francis, 30 N. J. Law 152; 28 C. J. 666,* and cases there collected. Moreover, the evidence disclosed that Mrs. English exercised undisputed and complete control of the account in which the fund was deposited, until her death on April 10th, 1925.

The complainant, however, insists that he had not the capacity to make the gift and that it is therefore invalid.

The test of mental capacity to make a gift is that the donor shall have ability to understand the nature and effect of the transaction. *Soper* v. *Cisco, 85 N. J. Eq. 165.* Applying that test the complainant had abundant mental capacity. According to the testimony he presented himself to the bank and, unaided, instituted and carried through to completion the banking transaction which resulted in the gift. The bank officer with whom he dealt testified that his mind was clear, his talk intelligent and his directions plain. His personal physician testified that, at the time, his mind was clear and he had capacity to transact the business. This undisputed testimony justifies the conclusion that he had the

mental capacity to make the gift, even though he was seventy years of age and somewhat enfeebled in health.

The complainant, however, further contends that the gift was invalid by reason of fraud or undue influence. We think not.

The complainant and Mrs. English were both about seventy years old. They were friendly, and, generally speaking, of about the same order of intelligence. The complainant was a widower and without children. Since the death of his wife, about nine years ago, he had boarded with Mrs. English, who kept a boarding house in Morristown. His nearest relative was a brother, with whom he was not on friendly terms. His physical health at times was not good. He had hardening of the arteries, and in December, 1922, went to a hospital. He was there treated for his physical disability and was discharged March 24th, 1923, having recovered his normal health to a great extent. He returned to Mrs. English's boarding house, where he remained, with others, as a boarder, until December 18th, 1923, when he made the gift now in question. He had two accounts in bank, one for $6,381.79 and the other for $5,356.90. When he appeared at the bank he had his bank book with him for the latter account. He told the teller that he desired to transfer that account to Mrs. English, who was with him. He did all of the talking. She said nothing on that topic. No doubt she knew the purpose of the complainant and her presence is reasonably accounted for by the fact that it was necessary in order to open the account in her name and sign the signature card, which she did. The bank teller testified that Mrs. English was entirely passive in the matter, and throughout the entire transaction he acted under the express direction of the complainant, who, he says, talked intelligently and was entirely clear as to what he wanted done. The complainant's personal physician testified that at this time (December, 1923) complainant's mind was clear and he was capable of transacting the business in question.

There was no evidence—not even the slightest—of fraud or undue influence. The complainant, however, argues that the

relation of the parties raised a presumption of fraud or undue influence. We think not. The fact that the donor was one of a number of boarders living in the boarding house kept by the donee is not sufficient to raise a suspicion of fraud or undue influence, in the absence of circumstances showing a relation of trust and confidence. And where, as here, the parties to a gift are of about equal age and mental capacity, and their relations are such as to indicate that they dealt on terms of equality, there being nothing to show superior knowledge of the matter derived from a fiduciary relation or overmastering influence upon the part of the donee, and nothing to show mental weakness or dependent confidential relation upon the part of the donor, the transaction is presumed to be valid, and it is not incumbent upon the donee to show affirmatively that no fraud or undue influence was used. *LeGendre* v. *Goodridge, 46 N. J. Eq. 419; affirmed, 48 N. J. Eq. 308; James* v. *Aller, 68 N. J. Eq. 666.*

But the complainant insists that the gift was invalid for want of competent and independent advice.

To this it is a sufficient answer to say that there was no relation of trust and confidence existing between the donor and the donee, and considering the donor's age, station in life, and fortune, nothing to indicate that he impoverished himself or gave away so much of his estate as to leave himself an object of charity, the undisputed fact being that besides the gift of $5,356.90 he had $6,381.79 in bank. We, therefore, think that proof of competent and independent advice was not essential to the validity of the gift. *Morrison* v. *Morrison, 94 N. J. Eq. 646; affirmed, 94 N. J. Eq. 801.*

Finally, the complainant contends that the vice-chancellor erred "in excluding the testimony of the complainant, Thomas Connors, regarding transactions with the deceased Bridget English," the intestate of the defendant administratrix. We think not.

The complainant now relies upon section 6 of the Evidence act. *Comp. Stat. p. 2223.* But this section only renders a complainant, otherwise incompetent, competent to

a limited extent, and does not allow him to testify generally. His evidence must be limited to the disproof of so much of the defendant's answer as is responsive to the allegations of the complainant's bill. *Lanning* v. *Lanning, 17 N. J. Eq. 228; Marlatt* v. *Warwick, 19 N. J. Eq. 439; Williams* v. *Vreeland's Executors, 30 N. J. Eq. 576.*

At the trial there was apparently no reliance upon that section, and no suggestion—not even the slightest—that the evidence tendered was competent as disproof of any part of the defendant's answer which was responsive to the complainant's bill. And our examination of the record, in the light of complainant's argument here, fails to disclose that any excluded testimony was competent for the reason now for the first time suggested.

The decree below will be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, JJ. 14.

*For reversal*—None.