## STATE EX REL. MARCO VERBON v. COUNTY OF ST. LOUIS AND OTHERS.[1]

December 3, 1943.

No. 33,557.

*D. A. Bourgin,* for appellant.

*Thomas J. Naylor* and *W. F. Dacey,* for respondents.

HENRY M. GALLAGHER, CHIEF JUSTICE.

Relator, an honorably discharged veteran of World War I, was employed by respondent county of St. Louis on January 5, 1939, as

[1] Reported in 12 N. W. (2d) 193.

superintendent of maintenance and construction for the sixth commissioner's district in the county highway department. On January 20, 1942, respondents board of county commissioners adopted a resolution that the county avail itself of the county civil service act, L. 1941, c. 423, and this action was ratified by the voters at the November election of that year. Thereafter, the board appointed civil service commissioners, and the appointments were approved by the judges of the district court in accordance with the provisions of the act.

On December 22, 1942, the county commissioners preferred charges of misconduct against relator and suspended him from service pending a hearing. The resolution suspending relator and notifying him that a hearing would be held on the charges on January 6, 1943, stated that the proceedings were under the veterans preference act, Minn. St. 1941, §§ 197.45, 197.46 (Mason St. 1940 Supp. §§ 4368, 4369), and under the county civil service act, L. 1941, c. 423. A hearing was held on the date fixed in the notice, and the following day a resolution was passed by the board of county commissioners finding relator guilty of misconduct and discharging him. Relator appealed to the civil service commission, which conducted a hearing and, having determined that the charges were not sustained, ordered his reinstatement. Respondents were represented at this hearing by the county attorney.

Contending that the civil service commission was without jurisdiction to pass upon the matter, respondents refused to reinstate relator, who obtained an alternative writ of *mandamus* requiring them to carry out the order of the civil service commission or show cause for failure to do so. Respondents demurred to the writ and the petition therefor on the grounds "that the said petition and writ do not state facts sufficient to constitute a cause of action, and on the further ground that it appears on the face thereof that the court has no jurisdiction of the subject of the action." The trial court sustained the demurrer on the first ground and ordered the alternative writ discharged. Relator appeals from the order sustaining the demurrer.

The only question presented in the court below and here is whether the county civil service commission had jurisdiction to entertain relator's appeal from the order of the county board discharging him. The determination of that question calls for a construction of the county civil service act to ascertain whether the legislature intended to give employes having a status such as relator enjoyed the protection of a hearing by the civil service commission before being discharged.

Section 6 of the act creates a classified and unclassified service of county officers and employes. It enumerates the positions which shall be in the unclassified service and provides that all others shall be in the classified service.

Section 7 provides:

"Any regular employee holding a position which is placed in the classified service under the provisions of this act shall be a member of the classified service if he has been in the employ of the county for five years or more, immediately previous to the time the board of county commissioners elects to avail itself of the provisions of this act."

It also provides:

"All other employees shall not be members of such classified service until such time as they shall have been appointed to such position in accordance with the provisions of this act."

Under this section, the director of the civil service commission is required, within two years from the date the county board elects to avail itself of the provisions of the act, to prepare and offer to all persons who are incumbents of positions in the classified service with less than five years of service, this being the status of relator herein, "a qualifying examination that is designed to test his fitness to perform the work of the class to which his position has been allocated." Section 7 further provides: *"All employees who may take qualifying examinations shall retain their positions until an opportunity is offered to take such examination."* (Italics ours.) Incumbents who pass the qualifying examination become members

of the classified service. Those who fail are removed from the service within a specified time.

Section 22 provides in part:

"No person in the classified service who shall have been permanently appointed or inducted into the classified service under provisions of this act shall be removed, suspended for more than 30 days, demoted or discharged except for cause which will promote the efficiency of the service * * * and only upon the written accusation of the appointing power or any citizen or taxpayer."

No provision is made for a hearing on removal or discharge of a person with a status like that of relator's, who has not been in the employ of the county for five years and who has not been afforded an opportunity to take a qualifying examination. It is conceded that such a person is entitled to a hearing before suspension or removal by reason of the provision which freezes him in his position until he has taken the examination or forfeited his right to do so by failing to take it when it is offered. L. 1941, c. 423, leaves in doubt the question whether the hearing shall be by the appointing board, in this case the county board, or by the civil service commission.

■ Relator contends that the civil service commission had jurisdiction to investigate and protect his right as an incumbent of a position in the classified service even though the procedural steps for doing so were not specifically set forth in the civil service act. In other words, he claims that he was entitled to the same protection as respects suspension and removal as members of the classified service. Much may be said in support of that contention. The act confers on an incumbent a valuable right, the right to retain his position until he is given a competitive examination. Although not a member of the classified service, he enjoys a status superior to a nonincumbent and to probationers, who by the terms of the act may be discharged by the appointing authority without cause and without hearing. The position held by relator was in the classified service, although he was not a member of that service. The qualify-

ing examinations were to be given by the civil service director under the rules and regulations of the commission. Section 4(b) and (d) of the act makes it the duty of the civil service commission:

"b. To make investigations either on petition of a citizen or of its own motion concerning the enforcement and effect of this act, to require observance of its provisions and the rules and regulations made thereunder."

"d. To make such investigations as may be requested by the board of county commissioners and to report thereon."

Other provisions of the act indicate an intention by the legislature to limit the jurisdiction of the civil service commission, in some respects at least, to persons included in the classified service. Section 4(a), defining the duties of the commission, reads:

"a. After public hearing to adopt such rules and regulations for the administration of this act, *such* classification *and compensation plans for the classified service, together with rules for their administration,* and amendments thereof as may be recommended by the civil service director after a thorough survey of personnel organization included in such plan or plans, and suitable regulations covering vacations, leave of absence and sick leave, the order of lay-off in case of a curtailment in the number of employees in any class in any department, *and any other conditions affecting the employment of persons within the classified service,* which, when approved by the board of county commissioners, shall have the force and effect of law and be binding upon all county officers, boards and commissions. Rules and regulations affecting employees of the county welfare board should be in conformance with any federal regulations established by the social security board." (Italics ours.)

Section 5(i) provides that probationers may be discharged by the appointing authority without cause and without hearing. Section 22 provides that members of the classified service be given a hearing by the commission under specified procedure before suspension or removal. Thus it appears that the legislature gave consideration to the subject of suspensions and removals and for two classes of

employes legislated on that subject. It failed to mention the procedure to be followed for the removal or suspension of employes of the group to which relator belonged. The court is asked in this proceeding to supply the omitted legislation. Courts cannot amend a statute under the pretext of construction. Ledin v. Holm, 203 Minn. 434, 281 N. W. 762. Nor can they "make exceptions and limitations which the statute does not warrant." Sandwich Mfg. Co. v. Zellmer, 48 Minn. 408, 417, 51 N. W. 379, 381. It is not the function of courts to supply that which the legislature purposely omits or inadvertently overlooks.

2. Relator was appointed to his position by the county board. Unless the civil service act, directly or by implication, provides otherwise, he was subject to removal by that board. State ex rel. Early v. Wunderlich, 144 Minn. 368, 175 N. W. 677; State ex rel. Nelson v. Board of Public Welfare, 149 Minn. 322, 328, 183 N. W. 521. A statute will not be construed as abrogating a rule of the common law unless such intention is clearly expressed. Thornton Bros. Co. v. Reese, 188 Minn. 5, 246 N. W. 527. "Intention" is defined as "a determination to act in a certain way or to do a certain thing." Webster's New Intl. Dictionary (2 ed.) 1934. It seems to us, as it did to the trial court, that if the legislature intended that incumbents of positions in the classified service with less than five years' service who had not taken a qualifying examination were to be given a hearing by the commission before suspension or removal, it would have clearly so stated in the law. That is what this court suggested should be done in State ex rel. Hilton v. City of Brookside, 161 Minn. 171, 201 N. W. 139, and in Kelly v. First Minneapolis Trust Co. 178 Minn. 215, 226 N. W. 696. That is what was done at the next session of the legislature when the county civil service law was amended to provide for such a hearing. L. 1943, c. 608, § 2. "It will be presumed that the legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment." 59 C. J., Statutes, p. 1097, § 647; State ex rel. Maryland Cas. Co. v. District Court, 134 Minn. 131, 158 N. W. 798; State

ex rel. Bozicevich v. City of Eveleth, 194 Minn. 44, 260 N. W. 223; also Hayes-Lucas Lbr. Co. v. Johnson, 172 Minn. 504, 215 N. W. 857. It should be noted that the state civil service act, L. 1939, c. 441, § 10 (4), specifically provides for a hearing by the civil service commission before the suspension or discharge of a person who is required to take a qualifying examination before his position becomes permanent.

The order appealed from is affirmed.

MR. JUSTICE LORING, absent because of accidental injuries, took no part in the consideration or decision of this case.