### TEXAS LLOYDS v. LAIRD.

#### No. 11966.

Court of Civil Appeals of Texas. Galveston.
March 25, 1948.
Rehearing Denied April 15, 1948.

N. B. Holman, of Houston, for appellant.

Nat Friedman, of Houston, for appellee.

CODY, Justice.

Appellee, as the insured, sued appellant as the insurer on a Dealer's Automobile Insurance policy, to recover $338.73 for collision damage to one of appellee's automobiles resulting from a collision that occurred on March 4, 1947. The court, trying the case without a jury, rendered judgment for appellee against appellant for the sum of $288.73, interest and costs. In response to appellant's request, the court filed conclusions of fact and law.

Among other findings of fact, the court found: That on March 4, 1947, about 7:30 P.M., two of appellee's employees, Haynes and Mason, took a 1947 Tudor Deluxe Ford Sedan to the 2900 block on Humble Road in the City of Houston to attempt to sell the same to a man by the name of Sanders. Said employees failed to make the sale, and thereafter proceeded out on the Humble Road some four or five miles to a restaurant, where they dined. About 9:30 P.M., said employees left the restaurant in said Ford accompanied by one Horan and Horan's wife, to return to appellee's place of business. At the intersection of Humble Road and Berry Road, which is the 8800-8900 block of Humble Road, said employees collided with the rear end of a truck stopped at the traffic light at said intersection,—at the time of the collision, the Ford was being driven by one of appellee's said employees.

The court's conclusions of law were to the effect:

1. The policy of insurance sued on covered the damages done to appellee's automobile by reason of said collision.

2. That the said Haynes and Mason were salesmen employed by appellee and took the automobile to demonstrate to a customer, who was located on the Humble Road, and the car was so taken there to demonstrate if for sale.

3. At the time the collision occurred, the said salesmen were returning the automobile to appellee's place of business in line with their duty as such.

4. That the automobile was a demonstrator and was taken for the purpose of being offered for sale, and was thus covered by the policy sued on.

The policy of insurance sued on, and which we have referred to as a Dealer's Automobile Insurance policy, consists, among other things, of:

1. The Texas Standard Automobile Policy.

2. An endorsement thereto attached, designated as "7. Automobile Dealers' Reporting Form 3—Collision".

3. An endorsement likewise attached to aforesaid Standard Automobile Policy, which endorsement is designated as "10. Automobile Dealers' Monthly Reporting Form—Form 3."

Item 3 of the aforesaid Texas Standard Automobile Policy, as issued, provides: "The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all of the terms of this policy having reference thereto.

der condition sale, mortgage or lien agreement. * * *.

"2. Exclusions (None are applicable).

"3. Named locations. * * *

"4. Schedule of locations and limits of liability thereat."

(One of the locations named is 326 North Main, Houston, Texas, which was the location at which the car in question was maintained.—The rate prescribed was $1.15 Theft, and 75 cents Fire.)

■ The first point on which appellant predicates its appeal is that the court erred in rendering judgment for appellee because the vehicle was not a demonstrator at the time of the collision. We think the point should be overruled.

| Coverages | Limits of Liability | Premiums |
|---|---|---|
| E–1 Collision or upsets | See Form 7 attached | $ 50.00 Min. |
| C Fire, Lightning and transportation | See Form 10 attached | $ 75.00 |
| D–2 Theft (Deductible Form) | See Form 12 attached | Inc. |
| | Total Premium | $125.00 Min. |

"Item 4. Description of the automobile and facts respecting its purchase by the named insured:

"(See Forms Attached.)"

"Item 5. Use: The purposes for which the automobile is to be used are ————."

On Form 7 appears this tabulation:

As noted above, Item 4 of the Texas Standard Automobile Policy refers to the "Forms attached" for the description of the automobiles which are thereby covered. The coverage so specified is shown in the endorsement designated "10. Automobile Dealers' Monthly Reporting Form—Form 3", as follows: "1. Coverage—This policy

| Coverage (As defined in the policy) | Limit of Liability | Minimum Premium |
|---|---|---|
| E–1 Collision or upset | Actual Cash Value less $50.00 deductible | $50.00 |

Form 10 provides in part:

"1. Coverage—This policy covers automobiles owned by the insured and held for sale or used in repair service or as demonstrators, but excludes automobiles sold un-

covers automobiles owned by the insured and held for sale or used in repair service or as demonstrators * * *." The court, as shown above, found that the automobile in question was a demonstrator.

940

The word; demonstrator, is defined by Webster's New International Dictionary, second edition, unabridged, as: "An article or product, as an automobile or radio, used for purposes of demonstration". The evidence showed without dispute that the automobile in question was used for the purposes of demonstration some two hours before the collision. This was sufficient to make a prima facie case that the automobile was used as a demonstrator, and was covered by the policy sued on. After the demonstration was made, the evidence showed that the salesmen used the automobile to drive out to get their dinner, before returning the automobile to their employer's place of business. There was nothing in the policy to exclude said automobile from coverage if it was not used exclusively for purposes of demonstrating. At the time of the collision, the appellee's salesmen were returning the automobile to his place of business in line with their duty.

The only ambiguity in the description of automobiles, covered by the policy sued on, which were used as demonstrators is implicit in the word "used". A narrow and strict meaning of the word would limit the coverage exclusively to the time that the automobile was being demonstrated to a prospective purchaser, in the presence of such prospective purchaser. Appellant does not contend for so strict a construction. It allows that an automobile is being used as a demonstrator during the time necessarily consumed, and while on the route necessarily traveled to take the demonstrator from appellee's place of business to the prospective customer, and back again to appellee's place of business. However, applying a liberal construction of the word "used", the automobile in question was used as a demonstrator by the salesmen, though they did not go directly from appellee's place of business to the prospective purchaser, and return directly after they failed to make a sale, under a settled principle of insurance law.

It is a settled principle of insurance law that "language of a policy which is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured".

24 Tex.Jur. 705. "In other words, when the contract is capable of two constructions under one of which recovery is allowed but under the other of which it is denied, the construction will be given which permits a recovery." 24 Tex.Jur. 707.

Appellant's second point is to the effect that the court erred in excluding the testimony of appellant's witness J. D. Lawson for the reason that his testimony would have explained the evident intention of the parties and the ambiguous term "demonstrator" as used in the policy. We overrule the point.

The witness Lawson was asked how long he had been employed, and answered that he had been employed about 18 years. He was not asked in what line he had been so employed. Then the following questions were asked him by appellant, to which he made the answers indicated:

"Q. You are familiar with the policies, endorsements and rates of the automobile policy, endorsements and rates of the automobile policy rates and endorsements on the Texas Standard Forms? A. Yes, sir.

"Q. I hand you a policy that has been put into evidence here, which is an automobile dealer's monthly reporting form, Form 3, an endorsement on Form 10, which has a fifty dollar deductible clause under Form 3, what is your interpretation of this coverage under those endorsements?"

The court sustained appellee's objection. Appellant does not show by a bill of exceptions what the witness would have answered. See Rules 372, 373, 418(c), Texas Rules of Civil Procedure; Cushenberry v. Profit, Tex.Civ.App., 153 S.W.2d 291; Sims v. Duncan, Tex.Civ.App., 195 S.W.2d 156; 3 Tex.Jur. 440. Also, the court did not err in sustaining the objection. Among other reasons, the interpretation of what coverage was provided by the policy was a question for the court, to be determined from the intention of the parties as expressed by them in the policy. The minds of the parties to a contract may not have actually met, because one may have intended one thing by the contract, and the other may have intended something else. However, the only way the court can determine whether there was a meeting of the minds

of the parties to a contract is to look to terms of the contract. In other words, a written contract speaks for itself. If the terms of the contract, as expressed therein, show that the minds of the parties met, the secret intention of a party not expressed in the contract is immaterial.

The judgment of the court is affirmed.