## McMICHAEL v. ELLIOTT et al.

### No. 6550.

Court of Civil Appeals of Texas. Texarkana.

Dec. 7, 1950.

Brown & Brown, Texarkana, for appellant.

Maxwell Welch, New Boston, for appellees.

WILLIAMS, Justice.

In this suit filed in late 1949 against Mrs. Lela McMichael, a feme sole, Mrs. Mittie C. Elliott, the surviving widow of W. D. Elliott, and their only child, Leavie Turquette, joined by her husband, sought title and possession of the West 57½ feet and the cancellation of leases on the East

57½ feet of Lot No. 4 in Block No. 14 in the town of DeKalb, and known as Lot No. 10 in Block 11-A in the recorded plat of the City of DeKalb, Texas.

On May 31, 1944, W. D. Elliott, without the joinder of his wife, executed a deed which purports to convey to Mrs. Lela McMichael for a recited consideration of $750.00 cash the West 57½ feet of above lot, said lot being community property of W. D. and Mittie C. Elliott. This deed so executed contained a general warranty of title. W. D. Elliott was then using a tin and wooden building that covered a substantial part of the West 57½ feet, to carry on his trade as a blacksmith and kindred work. Mrs. McMichael had erected by the spring of 1945 a two-story building at a cost as estimated by the witnesses from $1500 to $3000. She in person or through tenants had occupied and was occupying this building on April 19, 1949, the day W. D. Elliott died. After the sale of the West 57½ feet, Elliott used and occupied the most westerly 17½ feet of the West 57½ feet to pursue his trade as a blacksmith until his death. A partition wall which was erected by Mrs. McMichael separated this 17½ foot shop from the building so erected by her that covered the remainder of this West 57½ feet. The deed of Mrs. McMichael which was filed for record shortly after its execution reserved to Elliott the right to use the 17½ foot space for his shop as long as he was able to operate same, and then to revert to Mrs. McMichael.

Subject to the execution and delivery of the deed and subsequent to the erection and occupancy of the buildings by the respective parties, Elliott and wife on September 24, 1947, leased the East half of the lot to Mrs. McMichael for a term of five years, beginning October 1, 1947, and which called for the "punctual" payment of $36.00 per annum. They then on July 17, 1948, executed another lease to Mrs. McMichael covering the same East half of the lot for a term of ten years, to begin as of July 7, 1948, and which called for an annual payment of $36.00 payable each year in advance. W. D. Elliott received a check from McMichael dated September 25, 1948, which was endorsed and cashed by him. The check carries the notation "lease in advance up till September 25, 1949." The receipt for this payment which he gave at the time is of like effect. Mrs. Elliott refused to accept a check tendered by Mrs. McMichael, dated September 20, 1949, for $36.00 for the payment in advance for the rental for the year ending September 20, 1950. This check carries the notation on the back, "Not exseped."

Plaintiffs alleged that W. D. Elliott was of unsound mind at the time he executed the deed and that on the date of the deed, for years prior thereto and up to the date of his death, this West 57½ feet was used by Elliott as his business homestead in carrying on his trade. Grounded on the allegations that the deed was void because he was of unsound mind at the time and because the wife did not join in the conveyance of the alleged homestead, plaintiffs prayed for title and possession of the West half of the lot. And based on the contention that the annual rental on the East half was due on or before July, 1949, and Mrs. McMichael having failed to tender such rental by such date, plaintiffs prayed that the lease or leases be cancelled.

In her answer defendant denied that Elliott was of unsound mind; denied the premises were the business homestead at the time; pleaded the 5 years' statute of limitation; improvement made in good faith; payment of delinquent taxes and taxes accruing subsequently; and estoppel by deed and ratification by the subsequent leases executed by Mrs. Elliott. In respect to the leases she pleaded the annual rental was due on or before September 20, 1949, which she alleged was timely tendered. Her prayer that plaintiffs take nothing and her prayer in the alternative for relief were based on above contentions.

Under the evidence introduced, litigants joined issues on all the matters respectively alleged. The four issues submitted to the jury and their answers read:

"Special Issue No. 1: Do you find from a preponderance of the evidence that W. D. Elliott at the time he executed the deed to Lela McMichael, on the 31st day of May, 1944, to the west one-half of the lot of land

in controversy did not have sufficient mental capacity to understand the nature and effect of his act in signing said deed? Answer 'He did not' or 'He did.' "

"Answer: 'He did not.' "

"By the term 'insufficient mental capacity' is meant such defect of mind or reason as would prevent a person from understanding and knowing in a reasonable manner the nature and character of such transaction or to exercise his will in relation thereto."

"Special Issue No. 2: Do you find from a preponderance of the evidence that at the time W. D. Elliott conveyed to Lela McMichael the West one-half of the lot of land in controversy that he did so in good faith and without any intention to defraud his wife? Answer 'Yes' or 'No.' "

"Answer: 'No.' "

"Special Issue No. 3: Do you find from a preponderance of the evidence that at the time W. D. Elliott conveyed to Lela McMichael the land described in the deed dated May 31, 1944, that he did so in good faith for the purpose of discharging the taxes due and owing, on all of said property?" Answer 'Yes' or 'No.' "

"Answer: 'No.' "

"Special Issue No. 4: Do you find from a preponderance of the evidence that at the time W. D. Elliott executed the deed dated May 31, 1944, that he had already abandoned the use of the land described in said deed except the most westerly 25' 6" of said lot as a homestead? Answer 'Yes' or 'No.' "

"Answer: 'No.' "

The judgment recites that defendant's motion for judgment non obstante veredicto was overruled and plaintiffs' motion for judgment should be granted. However, the decree denied the child any recovery; awarded an undivided one-half interest in the West 57½ feet to each, Mrs. Mittie C. Elliott and Mrs. Lela McMichael; and cancelled the lease on the East 57½ feet of the lot.

All litigants have appealed.

Under plaintiffs' counter point No. 4, they assert that the decree with respect to the West half of the lot is without support under the jury's findings and in particular is invalid unless the court was authorized to and did set aside the jury's findings to Special Issue No. 1. From the recital in the judgment it appears that the court having in mind the holdings in Irion v. Mills, 41 Tex. 310; Weinert v. Cooper, Tex.Civ. App., 107 S.W.2d 593; Primitive Baptist Church v. Fla-Tex Corp., Tex.Civ.App., 158 S.W.2d 549, 554; Gore v. Gore, Tex. Civ.App., 203 S.W.2d 262, and such line of cases, concluded "said property became abandoned upon the death of W. D. Elliott and upon such event, said deed became operative to convey his undivided one-half interest in the West half."

If W. D. Elliott did not possess sufficient mental capacity to understand the nature and effect of his act in signing the deed as found by the jury, then it follows the deed failed to convey any interest. When we examine the findings to Special Issues Nos. 2 and 3, it appears that he did not act in good faith in making the deed and that he did not execute the deed with the intent to discharge the taxes due. The findings to the issues Nos. 2 and 3 are not to be reconciled with the finding to Special Issue No. 1. We are unable to logically reach any other conclusion than that if he did not possess sufficient mentality to understand what he was doing, he did not possess sufficient capacity to have or form the intent involved in Special Issues Nos. 2 and 3. In other words, the jury has answered that Elliott at the time he executed the deed did not have sufficient mental capacity to understand what he was doing, but when he signed the deed he had sufficient mental capacity to defraud his wife and he did not sign it with intent to discharge the delinquent taxes due on the property. It is apparent that there is an irreconcilable conflict in above findings.

The evidence in this record when weighed under the familiar rule as concisely restated in White v. White, 141 Tex. 328, 172 S.W.2d 295, 296, will not warrant the conclusion that any of the jury findings were without support in the evidence. It cannot be said from a study of the evidence that the evidence was any weaker or strong-

234

er in testing the sufficiency or insufficiency of any finding over any other finding. It is therefore the conclusion of this court based upon the foregoing observation that justice will be better served by a reversal and remand of this case.

Other issues were pleaded and raised in the evidence. In the absence of a request for the submission of such other issues and in the absence of any special exceptions to the charge and in view of another trial, we pretermit a discussion of the merits or alleged merits of such other issues so as to avoid prejudicing any asserted rights in same.

For the reason indicated, the judgment of the trial court is reversed and the cause is remanded.