**Mrs. Bessie HENNEBERGER et al.,**
**Appellants,**

**v.**

**Deborah M. SHEAHAN, Guardian, Appellee.**

**No. 14908.**

Court of Civil Appeals of Texas.

Dallas.

March 4, 1955.

Rehearing Denied April 8, 1955.

498

Allen Melton and James R. Ellis, Dallas, for appellants.

Golden, Croley, Howell, Johnson & Mizell, and John L. Roach, Dallas, for appellee.

DIXON, Chief Justice.

This suit was originally filed by Mrs. Sarah Henneberger in her own behalf for title and possession of bonds of a face value of $50,000 and a ring valued at $350. The defendants, appellants here, were the nieces and nephews of Edward Henneberger, of whom Mrs. Henneberger is the surviving widow.

Mrs. Henneberger an elderly person alleged ownership and sought recovery of the personal property upon three theories: (1) That it was unlawfully converted by appellants; (2) that if appellants claimed the property by virtue of transactions with Mrs. Sarah Henneberger, she was lacking in mental capacity to understand the effect and consequences of her acts; and (3) that she was unduly influenced by the words and acts of certain of appellants. In their answers appellants alleged ownership of the properties by virtue of gifts made to them by Mrs. Sarah M. Henneberger.

While suit was pending Mrs. Sarah M. Henneberger, on Oct. 15, 1952 in the Probate Court of St. Louis, Missouri was adjudged to be of unsound mind, and her sister, Mrs. Deborah M. Sheahan was appointed guardian of her person and estate. Thereafter on Nov. 21, 1952 Deborah M. Sheahan, as guardian, was substituted as plaintiff in the case.

The cause came on for trial March 15, 1954 before a jury, which returned a verdict to the effect that Mrs. Henneberger did make the gifts in question, that she was not unduly influenced to do so, but that at the time of making said gifts she did not possess mental capacity sufficient to understand the nature and effect of her acts, or the business she was transacting. Based on the jury's verdict, judgment was rendered for appellee as guardian.

Appellants first two points of error urge that there is an irreconcilable conflict between the jury's answer to issue No. 1, that "She did make a gift" and their answer to issue No. 2, that "She did not have mental capacity." These two issues had reference to the transactions involving the bonds. The same conflict was alleged to exist between similar answers to issues Nos. 4 and 5, which had to do with the ring.

The court defined gift as follows: "A 'gift' as that word is used in these issues, means a voluntary transfer of property from one person to another person without any consideration or compensation therefor, coupled with the intention of the donor to divest herself of the title, dominion and control of the property at the very time of the gift and the delivery of the possession of the property to the donee so that the donor can exercise no further act of dominion or control over it."

Mental capacity was defined as follows: " 'Mental capacity' as that term is used in these issues, means the ability to understand the nature and effect of the act in which a person is engaged, and the business she is transacting."

Appellants contend that the inclusion in the court's definition of gift, of the words *"voluntary* transfer of property * * * with the *intention* * * * to divest herself of title, dominion and control of the property * * *"* (emphasis supplied), necessarily includes the idea of mental capacity, so that an answer of "Yes" to issue No. 1 is equivalent to saying that the donor had mental capacity to make the gift. If such contention were correct there would indeed be a conflict in the jury's answers as asserted by appellants.

But in the light of the court's definition of mental capacity we do not see any

such conflict. The court defined mental capacity as " * * * the ability to *understand* the nature and effect of the act in which a person is engaged, and the business she is transacting."

Are the words intention and understanding as used in the court's definitions in this case so near the same in meaning that the jury's answers to the issues in question are inconsistent and conflicting? We do not believe so. They seem to us to convey different concepts. Understanding includes a realization in every direction of the practical effects and consequences of a proposed act. On the other hand intent looks merely to the accomplishment of an act without necessarily understanding its effect and consequences.

We believe that this material difference in the meaning of the two words is recognized by both lay and legal authorities. In Funk & Wagnalls New Standard Dictionary (1941) we find the following definitions:

"intention. 1. a settled direction of the mind toward the accomplishment of a particular act; * * * 2. * * anything intended to be done."

"understand. I 1. * * * receive or appreciate the significance of; apprehend; * * * 3. to have full and clear knowledge or mastery of. * * II * * * 2. To comprehend the relation of things."

The above definitions of intention are substantially the same in some particulars as that given by the court in the cases of In re McCafferty's Will, 142 Misc. 371, 254 N.Y.S. 789; In re Ambrose's Will, Sur., 58 N.Y.S.2d 614, at page 617, and State ex rel. Verbon v. County of St. Louis, 216 Minn. 140, 12 N.W.2d 193, at page 196. The above definitions of understand are similar in some respects to the definition of understand as given in Fox v. Schaeffer, 131 Conn. 439, 41 A.2d 46, at page 49, 157 A.L.R. 132 ("' * * * the realization of the practical effects and consequences in every direction of the proposed act * * *.' "), and White v. White, 60 N.J. Eq. 104, 45 A. 767, at page 771.

As we understand the meaning of the two words a child of tender years may have the intention to do a thing, but not understand the effect and consequences of doing it. An insane person may also intend to commit an act, but we say that he lacks criminal intent because he does not understand the effect and consequences of his act. Of course in the case at bar the question of criminal intent is not involved. Here Mrs. Sarah M. Henneberger, in her confused state of mind may have had the intention to give away her property, but her mental capacity was such that she was incapable of realizing the practical effect and consequences of so doing, to appreciate the significance of her act, or to comprehend the relation of things.

There are other authorities which, though not altogether in point, seem to us to bear on the subject. Western Indemnity Co. v. MacKechnie, Tex.Civ.App., 214 S.W. 456, an opinion by this Court; International-Great Northern R. Co. v. Pence, Tex.Civ. App., 113 S.W.2d 206; Fischer v. Gorman, 65 S.D. 453, 274 N.W. 866; Hochstetler v. Graber, 78 N.D. 90, 48 N.W.2d 15; People v. Henry, 23 Cal.App.2d 155, 72 P.2d 915. We hold that the issues in question do not present conflicting findings. Appellants' first, second, seventh, and eighth points are overruled.

■ Appellants also say that there was no evidence, or at least not sufficient evidence to support the submission of issues Nos. 2 and 5, which inquired about the mental capacity of Mrs. Sarah Henneberger. The record discloses that numerous lay and medical witnesses testified concerning her lack of mental capacity. For example, Dr. James F. McFadden, a psychiatrist, testified that he had examined and treated Mrs. Henneberger many times beginning Oct. 1, 1952; that she had a mental condition known as schizophrenia of the paranoid type and suffered from delusions and hallucinations, a derangement she had had before going to a hospital in Wisconsin, which derangement she still has; and it is incurable; that she is of unsound mind and does not possess mental capacity to under-

stand the nature and consequences of her acts; and that her acts are influenced by her delusions and hallucinations. Other doctors also testified that she was of unsound mind. There is testimony from other witnesses of her hallucinations concerning voices, noises, ideas of persecution, chairs wired, etc., and her belief that there was a live rat in her stomach. The question of the mental capacity of Mrs. Sarah M. Henneberger was for the jury, which based its verdict on substantial evidence. We overrule appellants' third, fourth, fifth, and sixth points.

Appellants' ninth point asserts error because the trial court's definition does not include these words "And a mere mental weakness is not of itself sufficient to incapacitate a person." A definition somewhat similar to the one given in this case, without including the above quoted instruction, has been approved by our Supreme Court. Rutherford v. Robbins, Tex. Com.App., 298 S.W. 549. See also Nass v. Nass, Tex.Civ.App., 224 S.W.2d 280. We overrule appellants' ninth point.

Appellants further complain because the court overruled their motion to restrict the testimony of certain witnesses under art. 3716, Vernon's Ann.Civ.St., the "Dead Man's Statute." The witnesses were Elizabeth Page, Charles Arthur Page, Martha Proctor, Mary Pfenninghausen, Deborah Jane Sheahan, Deborah M. Sheahan, and Dr. Edwin L. Sheahan.

We find no testimony in the record of Martha Proctor, Mary Pfenninghausen, or Deborah M. Sheahan. Portions of the deposition of Elizabeth Page were first introduced by appellants; in rebuttal appellee offered only one question and answer from said deposition. Moreover Elizabeth Page is not a party to the suit and though a niece of Mrs. Sarah M. Henneberger, is not shown to be an heir. Nor are Charles Arthur Page, Deborah Jane Sheahan or Dr. Edwin L. Sheahan parties to the suit, or shown to have an interest in the estate within the terms of art. 3716, V.A.C.S. The fact that they are relatives of parties to the suit is not sufficient of itself to restrict their testimony under the statute. Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291, at page 294. Moreover the record shows that appellants thoroughly cross-examined the last three named witnesses respecting the matters they had testified about on direct examination. By so doing appellants waived the prohibition declared by the statute. Garza v. De Leon, Tex.Civ.App., 193 S.W.2d 844; Walkup v. Stone, Tex.Civ.App., 73 S.W.2d 912; Hearon v. Jackson, Tex.Civ.App., 109 S.W.2d 230. We overrule appellants' tenth point.

In their last point appellants say that the court erred in sustaining appellee's motion to restrict the testimony of certain witnesses under art. 3716, V.A.C.S. The record contains no bills of exception showing what would have been the testimony of the witness. Since we do not know what the testimony would have been we are unable to pass on the question whether it was error to restrict or exclude it. J. Weingarten, Inc., v. Brockman, 134 Tex. 451, 135 S.W.2d 698 (opinion adopted by S. C.); Cushenberry v. Profit, Tex.Civ. App., 153 S.W.2d 291 (writ ref. w. m.); Texas Lloyds v. Laird, Tex.Civ.App., 209 S.W.2d 937; 3-A Tex.Jur. 534. Appellants' eleventh point is overruled.

The judgment of the trial court is affirmed.

### On Rehearing.

Among the cases which have had our serious consideration in weighing the merits of appellants' contentions are McMichael v. Elliott, Tex.Civ.App., 235 S.W.2d 231, and Harrison v. Davis, Tex.Civ.App., 58 S.W.2d 1025.

In the McMichael case, a suit was brought by Elliott's surviving widow and child to cancel a deed and a lease contract. A jury found that Elliott did not have sufficient mental capacity to execute a warranty deed to McMichael; it then found that he did not execute the deed in good faith but did so with the intention of defrauding his wife, not for the purpose of discharging

the taxes due and owing against the property. We agree with the appellate court's holding that the findings in the McMichael case present a conflict requiring reversal of the trial court's judgment. We believe the word intention as used in connection with good faith, fraud and purpose must be given a broader meaning in the McMichael case than we ought to ascribe to the word when we consider it in its context in the present case.

What we have said above is even more applicable in the case of Harrison v. Davis, supra. Hays was a bachelor 80 years old who had lived "in isolation, * * * filth, loneliness, and suspicion." He developed some unexpected obligations, so he shrewdly went about a design to defraud his creditors, which he executed with such "astounding success" that he "thoroughly deceived" his creditors. Part of his scheme was to convey his estate to Harrison for the alleged consideration of the latter's taking care of him the remainder of his life. The jury found that Hays was not mentally capable of making the conveyance to Harrison but found also that he had made the conveyance to hinder, delay and defraud his creditors. The facts of the case and the context in which the word intent is used in the Hays case do indeed give the word as there used such a broad meaning as to require a reversal on the ground of a conflict in jury findings. But we do not consider the Harrison case analogous to the situation before us in the instant case.

A case which by implication recognizes the difference between an *intention* to make a gift and *mental capacity* to do so is Connors v. Murphy, 100 N.J.Eq. 280, 134 A. 681, 53 A.L.R. 1115. It involved a suit by an administrator to set aside a gift of money in a bank account made by the deceased in his lifetime. The court said the intention to make a gift was not questioned. However the complainant insisted that the deceased did not have the mental capacity to make a valid gift. The court then very carefully considered the evidence to determine whether the deceased at the time possessed mental capacity and concluded that the undisputed testimony showed that he did. But the case is significant here because the court by implication held that while the intention to make a gift was not in question, the mental capacity of the donor was in question and the court then weighed the testimony in order to determine the question of mental capacity.

Appellants' motion for rehearing is overruled.

CRAMER, J., dissents.

### Dissent on Rehearing.

CRAMER, Justice.

I find myself unable to agree with the disposition of this cause by the majority.

This suit was by Mrs. Sarah M. Henneberger in her own behalf against appellants herein, seeking among other relief not here material, recovery of certain United States Treasury Bonds, payable to Bearer, of an aggregate face value of $49,000, a Highway Bond issued by the State of Illinois, payable to Bearer, of a face value of $350. A receiver was appointed to take possession and control of such securities and property, and all of the same were tendered intact into the registry of the trial court. On the 15th day of October, 1952, Mrs. Sarah M. Henneberger was adjudged by the Probate Court of St. Louis County, Missouri, to be a person of unsound mind, and her sister, Mrs. Deborah M. Sheahan, was appointed guardian of her person and of her estate. An ancillary appointment of the guardian was subsequently made by the Probate Court of Dallas County, Texas, and on November 21, 1952 Deborah M. Sheahan, in her capacity as such guardian, was ordered substituted as plaintiff in this cause. Mrs. Sheahan, in such capacity, then continued the prosecution of such cause and filed both a first and a second amended original petition.

Briefly stated, the plaintiff (appellee herein), in her amended pleadings, alleged the ownership and sought recovery of the securities and personal property therein and

hereinabove described, upon three theories: First, that they were unlawfully converted by the defendants (appellants herein); second, that if the defendants were claiming such property by virtue of transactions had with Mrs. Sarah M. Henneberger, the said Mrs. Sarah M. Henneberger was at such time or times of unsound mind and totally lacking in mental capacity sufficient to understand the nature, effect and consequences of her acts; or, third, Mrs. Sarah M. Henneberger was at such time or times unduly influenced by the words and acts of certain of such defendants.

In each of their answers, and in particular in their first amended original answer, upon which they proceeded to trial, all of the defendants alleged ownership of such properties by virtue of gifts made to them by Mrs. Sarah M. Henneberger on November 5, 1951, and on June 21, 1952.

The trial was concluded after two weeks of testimony. The jury found Mrs. Sarah M. Henneberger did make the gifts in question, that she was not at such times unduly influenced, but that she did not at either of such times possess mental capacity sufficient to understand the nature and effect of her acts and the business she was transacting. On April 20, 1954 judgment was entered that the plaintiff, in her capacity as guardian of the person and estate of Sarah M. Henneberger, have and recover from the appellants possession of and title to the securities and properties therein and hereinabove described. From that judgment this appeal has been duly perfected.

Points 1 and 7 will be considered together. They assert error (1) in entering judgment because the jury's findings to issues 1 and 2 are in irreconcilable conflict; and (7) in submitting issue No. 2 because it is duplicitous and asks the same question as is submitted in issue No. 1. These points are countered that the judgment is supported by the finding to issue 2 which is consistent and not in conflict with the finding to issue No. 1 and, if conflicting, the issues are not in irreconcilable conflict and therefore not reversible error.

Issues 1 and 2 are as follows: "Special Issue No. 1. Do you find from a preponderance of the evidence that Mrs. Sarah M. Henneberger made a gift, as that term is hereinbefore defined, of the bonds involved in this lawsuit to Armin Henneberger, Wayne Henneberger, Martha Ann Henke, Ruth Holmes and John Henneberger on June 21, 1952?" Answer: "She did make a gift." Special Issue No. 2: "Do you find from a preponderance of the evidence that Mrs. Henneberger did not have the mental capacity, as that term is hereinbefore defined, on June 21, 1952 to make a gift, if any was made, of the bonds involved in this lawsuit?" Answer: "She did not have the mental capacity."

The court in his charge defined a gift as follows: "A 'gift' as that word is used in these issues, means a voluntary transfer of property from one person to another without any consideration or compensation therefor, coupled with the intention of the donor to divest herself of the title, dominion and control of the property at the very time of the gift and the delivery of possession of the property to the donee so that the donor can exercise no further act of dominion or control over it." And defined mental capacity as follows: " 'Mental capacity' as that term is used in these issues, means the ability to understand the nature and effect of the act in which a person is engaged, and the business she is transacting."

Under the charge the jury found that Mrs. Sarah M. Henneberger made a gift, or, considering the trial court's definition of gift, she made a voluntary transfer of the bonds involved to Armin Henneberger et al. on June 21, 1952, coupled with the intention of divesting herself of the title, dominion, etc., so that she could exercise no further act of dominion or control over them, and at that very time the jury also found that she did not have the ability to understand the nature and effect of her said act in making the gift.

A conflict exists when the answers of the jury to the issues are such that both cannot be true concerning the correct material effect thereof on the rights of the parties. As stated in Leopard v. Stanolind Oil & Gas Co., Tex.Civ.App., 220 S.W.2d 259, 260, syl. 5: "'Intent' of a contract is purpose formed in man's mind." Black's Law Dictionary, 3rd Ed., defines "intent" as follows: "Purpose; formulated design; a resolve to do or forbear a particular act; aim; determination. In its literal sense, the stretching of the mind or will towards a particular object. 'Intent' expresses mental action at its most advanced point, or as it actually accompanies an outward, corporal act which has been determined on. *Intent* shows the presence of *will* in the act which consummates a crime. It is the exercise of intelligent will, the mind being fully aware of the nature and consequences of the act which is about to be done, and with such knowledge, and with full liberty of action, willing and electing to do it. Burrill, Circ.Ev. 284, and notes."

The intention of Mrs. Henneberger to make a voluntary transfer of property and divest herself of the title thereto in my opinion must be coupled with the mental capacity to understand the nature and effect of her act in making the transfer. The phrase ability to understand the nature and effect of an act, is but one element of the total question here. There is also the element of intention in making the gift, that is, the intention to divest herself of title and possession. Under the definition of gift contained in the court's charge, this element is included.

Under such state of the record there is a conflict between issues 1 and 2, such as destroys the effect of both findings. McMichael v. Elliott, Tex.Civ.App., 235 S.W. 2d 231; Harrison v. Davis, Tex.Civ.App., 58 S.W.2d 1025. Points 1 and 7 should have been sustained.

Point 2 in substance is: Issues 4 and 5 are in irreconcilable conflict. This point is countered that the judgment is sustained by the finding to issue 5 and such finding is entirely consistent and in no way conflicts with the finding to issue 4, and if they do conflict, such conflict is not irreconcilable and does not present reversible error.

By issue No. 4 the jury found that deceased made a gift on Nov. 5, 1951; and in issue No. 5, that on November 5, 1951, the same date, she did not have mental capacity to make the gift. Under the definitions contained in the charge heretofore set out, which were a part of the charge and controlling in the jury's consideration of the issues, the findings being in conflict for the reasons set out in points 1 and 7, they destroy each other. Point 2 should have been sustained.

Since there was, in my opinion, a conflict between the findings to issues 4 and 5, and also between issues 1 and 2, as set out in appellants' points 1, 2, and 7, the judgment below should have been reversed and remanded for a new trial.

For the reasons stated, I respectfully dissent from the affirmance of the judgment of the trial court by the majority.