Juana Robles NIETO et vir, Appellants,

v.

UNITED STATES NATIONAL BANK OF GALVESTON, Appellee.

No. 14414.

Court of Civil Appeals of Texas.

Houston.

Nov. 19, 1964.

Rehearing Denied Dec. 10, 1964.

Nipper & Knox, James E. Knox, Houston, for appellants.

McLeod, Mills, Shirley & Alexander, V. W. McLeod, Galveston, for appellee.

WERLEIN, Justice.

This suit was brought by appellants to recover damages for personal injuries allegedly sustained by appellant, Juana Robles Nieto, on October 12, 1959 when she fell from a ladder or stool while attempting to replace her safe deposit box in its slot or pigeon hole in the safe deposit vault of the United States National Bank of Galveston. After the jury had been retired for approximately seven hours and had indicated to the trial court that it was hopelessly deadlocked on the first issue pertaining

to liability, the court, on motion of appellee, withdrew the case from the jury and rendered judgment that appellants take nothing. Appellants, who moved that a mistrial be declared, assert that the court's action was error since there were fact issues in the case.

The testimony of appellant, Mrs. Nieto, who testified through an interpreter, is so conflicting, confusing and contradictory and inconsistent with her previous testimony by deposition, that it is practically impossible to determine therefrom what happened on the occasion in question. Her testimony is to the effect that a woman employee of the Bank took the safe deposit box from its slot in the wall of the vault and handed it to her. After finishing her business, she waited about ten minutes for the employee to return, and then decided to replace the box. We quote certain parts of her testimony which seem most favorable to her, as follows: "Q. And then when you were through with your box what happened then? A. Her say the lady employer not be back in more than ten minutes and that her go up and fix the box in the wall and at that time lost the balance and went down, one foot in the front and one foot in the back. Q. Could you reach your box from the floor? A. No." * * * "Q. In your own words, describe what happened. A. In that time I go up for the little case, for the deposit, and the little bench move and thereby lost control". * * * "Q. Did you stand on something when you were trying to put your box back? A. He [meaning she] say a box. I don't know whether made of wood or metal. Q. She doesn't recall whether it was a stool or a box? A. No, sir. Q. Do you recall what it was made of; do you recall what this stool or box was made of? A. Yes. Q. What was it made of? A. He say he lost control and after a stumble her sister touched her. COURT: He asked her what was it made out of; wood, metal or what. The box. A. She don't remember the material." * * * "Q. Where were your feet when you fell, just

as you started to fall? A. He say at the time he went up with the box and lost control back, one foot one side and one foot other side. Q. Why did you lose control? A. At that time to put the box up. The bench, when he was coming up, it moved, not this way, but this way (indicating)."

The only other eye-witness to the occurrence was Mrs. Nieto's sister, Mrs. Mendoza, who was with appellant on the occasion in question. The testimony of Mrs. Mendoza, which is most favorable to appellants is in substance that the stool involved in the accident looked like it was made out of wood; that it was square, from 8 to 10 inches in height, had legs on it that didn't have any rubber caps or anything on them; that it had only the one step which was the top of the stool; that appellant waited a few minutes before she tried to put the box in its slot; that she had the box in her hands and put one foot on the stool to put the box in its slot, and when she undertook to place her other foot on the stool it moved forward and appellant fell backward; that she did not notice the lady employee who removed the safe deposit box from its slot use any stool but she was taller than the witness and appellant; that she saw appellant lose her balance, and she looked down and saw the stool move a little bit forward but she didn't know whether the stool slid before her sister fell or not; that it appeared to her that appellant was not falling to her right or left but backward; that when she saw appellant falling appellant still had one foot on the stool and she appeared to be falling back; that appellant had put the weight of her left foot on the stool, and as she was going to put her right foot on the stool it seemed as if it went forward and slipped out from under her; that when she went to help her sister she realized how slippery the floor was, and that at the time the witness's right foot was towards the wall and it seemed to slip more than her left foot, but she didn't know whether that was when she went to grab appellant; that she couldn't tell that the floor was slippery by looking

at it, and didn't notice it until she walked on it.

In determining whether it was proper for the court to take the case from the jury and render judgment, we must view the evidence in the light most favorable to appellant, the losing party. White v. White, 1943, 141 Tex. 328, 172 S.W.2d 295. He must indulge against the action of the court every inference that may properly be drawn from the evidence, and if the record reflects any testimony of probative force in favor of the losing party, we must hold the court's action improper. Texas Employers Ins. Ass'n v. Boecker, Tex.Civ. App., 53 S.W.2d 327, error ref.; Clutter v. Wisconsin Texas Oil Company, Tex.Civ. App., 233 S.W. 322, error ref.

The judgment of the court does not recite upon what grounds the case was withdrawn from the jury and judgment rendered by the court. Appellee's motion for judgment, however, alleges that appellants "failed to establish any plead act of negligence"; that their only proof was that Mrs. Nieto stepped on a little stool and fell; that if there was a little stool and appellant stepped on it and fell, then as a matter of law the stool and the fact that it was wooden as well as its other features would be open and obvious to her; that as a matter of law the burden of proof was on appellants to prove a breach of duty, and to establish as one of the elements thereof that the defective device was not open and obvious, and this appellants failed to do.

Appellants pleaded, among other grounds of negligence on the part of appellee, the following:

"3. That the aforementioned ladder or stool was an unsafe and dangerous instrumentality as a result of the absence of an effective device on the legs of said ladder to provide traction between the legs of the ladder and the floor on which it rested. Such condition causing the ladder to have a tendency to slip and slide on said floor.

"4. That the floor and ladder and their respective conditions, when used together and in conjunction with each other constituted a dangerous condition not readily discoverable to Juana Nieto in the exercise of due care.

"5. The Defendant Bank failed to maintain and give any notice or warning to Juana Nieto to the dangerous and unsafe condition of the ladder and floor as above set forth."

In our opinion, the foregoing paragraphs constitute sufficient allegations of negligence on the part of appellee. It is apparent that in such pleading the words *"ladder"* and *"stool"* are used synonymously. Both appellant and Mrs. Mendoza testified in effect that the stool in question was not the ladder which was introduced in evidence as "Plaintiffs' Exhibit 16". Appellee in its amended answer pleaded among other things contributory negligence and that if any defect existed, it was open and obvious. In Halepeska v. Callihan Interests, Inc., Tex.1963, 371 S.W.2d 368, the Court, in a carefully considered opinion by Justice Greenhill, clearly states the established rules of law in this State with respect to the doctrine of "no duty" and "clear and obvious". The Court stated:

"The 'no duty' doctrine is this: the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950); Genell, Inc. v. Flynn [163], Tex. [543], 358 S.W.2d 543 (1962). His duty is to protect his invitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he *should* know in the exercise of ordinary care. If there are dangers which are not

open and obvious he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them 'no duty' to warn or to protect the invitees. This is so, the cases say, because there is 'no duty' to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof."

The evidence shows that Mrs. Nieto had during a period of more than two years immediately prior to her injury visited appellee's vault some 15 times and made use of her safe deposit box. She had never before undertaken to get on a ladder or stool to take down or replace such box. Her testimony and that of Mrs. Mendoza is that when she attempted on the occasion in question to use the stool to replace the box, the stool moved forward, and she lost her balance and fell. Mrs. Mendoza testified that the floor in the vault was slippery and that the stool had no rubber caps or anything on its legs to keep it from slipping, and that when she went to help her sister she herself slipped and then realized how slippery the floor was. She also testified that she could not tell the floor was slippery by looking at it, and that she did not see anything in the bank that would give her any warning that Mrs. Nieto might fall from the foot-stool. The vault was well lighted and had a marble tile floor. There was no evidence that it had been recently waxed or oiled.

The instant case is distinguishable from the case of Houston National Bank v. Adair, 1948, 146 Tex. 387, 207 S.W.2d 374, in which the Court held that the evidence was undisputed that the condition of the stairs was open, visible and obvious to any reasonably prudent person; that the plaintiff had been a customer of the bank for several years, and had used the stairs at irregular intervals to go to the Statement Window, and that during such period the condition of the stairs was not changed, and she had ample opportunity to observe their condition. There was no evidence of any hidden or latent defect in the stairs, and their condition was as easily perceptible to the plaintiff as to the bank or its employees.

In the instant case, appellant had never previously used the stool in question. She was not in as good a position as appellee and its employees to know that the stool had no rubber caps or other device on the bottom of the legs to prevent it from slipping on the marble floor. There is no evidence that she saw or could have seen whether there were rubber caps or pads under the stool's legs without picking it up and carefully inspecting it. She had a right to assume that appellee would not furnish a stool not reasonably safe for her to stand upon in replacing her box in its slot, and she was not required to make an inspection thereof. Appellee was required to inspect and to discover dangerous conditions and to keep its premises and appliances placed thereupon for the use of its invitee in a reasonably safe condition, and to protect her from dangers which were not open and obvious. There is nothing in the record to show that she had knowledge of such dangerous condition resulting from the absence of rubber caps or some other device on the legs of the stool that would keep it from slipping when she used it upon the marble tile floor.

■■ Reverting again to the Halepeska case, supra, we quote the following language:

"Similarly, in both the 'no duty' and *volenti* situations, whether he actually knows and appreciates the danger may be for the jury to pass upon, despite his testimony that he did not. His credibility may be for the jury. Moreover, the jury may be called upon to

find whether he had knowledge of particular facts from which he would be charged with knowledge or appreciation of the danger. Or, in a proper case, the court may hold as a matter of law that the plaintiff had knowledge or that he is charged with knowledge and appreciation of the danger."

We are unable to hold as a matter of law that Mrs. Nieto, who had never used the stool before or undertaken to return her safe deposit box to its slot, had knowledge, or that she was charged with knowledge and an appreciation, of the danger in using the stool on the tile floor. We cannot say as a matter of law that the condition of the stool with respect to no rubber caps at the bottom of the legs was open and obvious to appellant, or that the appellee did not owe her a duty to warn or to protect her in connection with the use of the stool on the slippery floor. Had appellant slipped and fallen on the floor over which she had walked at irregular intervals over a period of some two years, we would have a case somewhat similar to that of Houston National Bank v. Adair, supra. In the instant case, however, it was the combination of using on a slippery marble tile floor a stool without any rubber caps or other device to keep it from slipping, which created the dangerous condition not open and obvious to one who had never before been confronted with such situation. There was at least a fact issue raised with respect to whether the use of the stool upon such floor created a dangerous condition which was not open and obvious. There was also a fact issue with respect to whether Mrs. Nieto had knowledge of particular facts from which she would be charged with knowledge and appreciation of the danger.

In our opinion, the present case is distinguishable from the case of Wesson v. Gillespie, Texas Supreme Court, 382 S.W. 2d 921, in which our Supreme Court on October 7, 1964 reversed Gillespie v. Wesson, Tex.Civ.App., 370 S.W.2d 918. In the Gillespie case the condition of the threshold at the entrance to the 8-Ball Lounge in Wichita Falls was held to be open and obvious to the plaintiff who had been in and out of the 8-Ball two or three times a week for four or five years, and who had crossed such threshold "an astronomical number of times," at least 500, and who had tripped on her fourth exposure to the threshold that night. Moreover, the plaintiff in that case admitted the steps were just like they had always been, and in referring to the steps or entrance she testified that she considered it dangerous but she kept on using it anyway.

We have considered the other cases cited by appellee and are of the view that they are all distinguishable from the instant case. In the case of Robert E. McKee, General Contractor, v. Patterson, 1954, 153 Tex. 517, 271 S.W.2d 391, relied upon by appellee, it was held that the owner of property is charged with knowledge of any dangerous condition that a reasonable inspection would have revealed because his duty to keep his premises in a reasonably safe condition for use by his invitees includes a duty to inspect. There is no such obligation on the invitee. He may not close his eyes to obvious dangers, but he has a right to assume that the premises are safe for his use. In the McKee case the plaintiff's testimony established that he knew of the slick condition of the floor and fully appreciated the danger of working on it. Such is not the situation in the case at bar.

■ Appellant complains that the trial court erred in refusing to allow appellant's counsel to propound leading questions in conducting the examination of appellant. In view of the apparent illiteracy of appellant and her inability to understand English, it doubtless would have been proper for the court to permit the use of some leading questions. We cannot say, however, that the court abused its discretion in refusing to do so. Travelers Insurance Company v. Hurst, Tex.Civ.App., 358 S.W.

2d 883, error ref., n. r. e. The fact that appellant spoke little or no English did not require the Court to permit leading questions in view of the fact that she did speak Spanish and her testimony was given through an interpreter. There is no showing as to what the witness's answers would have been to the questions propounded, and hence the propriety of sustaining objections to the leading questions cannot be considered on appeal. Bradford v. Magnolia Pipe Line Co., Tex.Civ.App., 262 S.W.2d 242; Taylor v. Taylor, Tex.Civ.App., 272 S.W.2d 636, error ref., n. r. e.; Henneberger v. Sheahan, Tex.Civ.App., 278 S.W. 2d 497, error ref., n. r. e.; Statler Hotels v. Herbert Rosenthal Jewelry Corp., Tex. Civ.App., 351 S.W.2d 579, error ref., n. r. e. Moreover, appellant has failed to show that any error in connection with the refusal to permit the asking of leading questions was calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

Reversed and remanded.